COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-375-CR

BRETT BELCHER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY

------------

OPINION

------------ 

I.  Introduction

Appellant Brett Belcher raises two points challenging the trial court’s denial of his motion to suppress: (1) that his continued detention by Officer Paul Willenbrock—an officer fully qualified to perform all aspects of a DWI investigation—to await the arrival of Officer Lisa Martin, the DWI Enforcement Officer for the Denton Police Department, constituted an unreasonable detention in violation of the Fourth Amendment and (2) that the trial court erred by permitting Officer Willenbrock to testify at the suppression hearing because Officer Willenbrock was not competent.  Giving almost total deference to the trial court’s findings, viewing all of the evidence in the light most favorable to the trial court’s ruling, and considering the totality of the circumstances, we will affirm the trial court’s ruling that Belcher’s continued detention was not unreasonable under the Fourth Amendment.  Because we also hold that the trial court did not err by admitting Officer Willenbrock’s testimony, we will affirm.

II.  Facts Presented at Suppression Hearing and Procedural Posture

At the suppression hearing, the trial court heard testimony from Officer Willenbrock, Officer Martin, and Belcher.  The trial court also admitted into evidence and viewed the recording of that night’s events taken from the video recorder in Officer Willenbrock’s patrol car, which was included on a DVD in the appellate record and which we have also reviewed. 

Officer Willenbrock testified at the suppression hearing that he is certified to conduct field sobriety tests; he has been trained in the Horizontal Gaze Nystagmus (HGN).  On December 31, 2005, Officer Willenbrock was working the 11:00 p.m. to 7:00 a.m. shift as a patrol officer.  At 2:40 a.m. on December 31, 2005, Officer Willenbrock stopped a vehicle driven by Belcher because he had observed Belcher commit several traffic offenses.  Officer Willenbrock believed Belcher might be intoxicated, and two minutes into the stop he contacted Officer Martin.
(footnote: 1) 

Officer Willenbrock testified that his intent in contacting Officer Martin was to have her “take over the DWI investigation.”  He wanted Officer Martin to take over the investigation because, “a typical DWI can run four, four and a half hours, . . . where [Officer Martin] can do it in half the time.”  The Denton County Police Department does not have a policy that requires officers to contact Officer Martin or to turn DWI investigations over to her, and Officer Willenbrock had never previously called Officer Martin to take over a DWI investigation.  Officer Willenbrock expected that it would take Officer Martin approximately five minutes to arrive at the scene. 

The DVD of the stop shows that Officer Willenbrock stopped Belcher at 14:44, had Belcher exit his vehicle at 14:46, and contacted Officer Martin at 14:47.
(footnote: 2)  The DVD indicates that for the next seven minutes Officer Willenbrock asked Belcher routine questions that were related in scope to Belcher’s detention for the traffic offenses.  For example, Officer Willenbrock asked Belcher whether he had any warrants out for his arrest, how old he was, whether he had any weapons or drugs in his vehicle, where he had been all day, and where he had been specifically during the three hours before the stop. 

At 14:56 on the DVD, Officer Willenbrock again contacted Officer Martin.  At the suppression hearing, Officer Willenbrock testified that this contact occurred approximately fifteen minutes after his first contact with Officer Martin.  Officer Martin “indicated to me [Officer Willenbrock] that she was involved in another, a backup, backing up another officer on another type of stop and got stuck at that scene and was still intending on coming to my location.” 

From this point on, 14:56 until 15:23 on the DVD—i.e., the next twenty-seven minutes—Officer Willenbrock asked no questions related in scope to the initial purpose of the stop and asked no questions related to a DWI investigation.  During the suppression hearing, Officer Willenbrock conceded that he had not diligently pursued a DWI investigation:

Q.  Officer, would you say you diligently pursued your DWI investigation?

A.  Diligently pursued?

Q.  Yes.

A.  I didn’t run the investigation.  So I didn’t diligently pursue the       DWI investigation.

The DVD of the stop shows that at 14:58 during this twenty-seven minute time period Belcher asked, “Is there a problem?” and Officer Willenbrock indicated that there was no problem; he was just waiting on his partner.  

At 14:59, nineteen minutes into the stop, the DVD shows that Officer Willenbrock allowed Belcher to put on a ski parka that he obtained from the backseat of Belcher’s vehicle.
(footnote: 3)  At 14:59 on the DVD, Officer Willenbrock told  Belcher to “hang tight, I am waiting for my partner to get here.”  Belcher asked whether he could turn off his vehicle’s headlights so that his vehicle’s battery would not die, and Officer Willenbrock permitted him to do so.  Belcher then asked whether it was okay for him to smoke a cigarette, and Officer Willenbrock permitted Belcher to smoke.  At 15:01 on the DVD, Belcher exclaimed, “I am freezing.”  At 15:01 on the DVD, Officer Willenbrock told Belcher, “Just hang out and smoke a cigarette; I’ll go talk to my partner, it should be just a minute.”   Belcher then pulled the hood of his parka up over his head.  From 15:01 through 15:05, the DVD shows Belcher standing alone near his vehicle.  Officer Willenbrock was in his patrol vehicle.

At 15:05 on the DVD, Officer Willenbrock returned to stand near Belcher and asked, “Are you pretty good at snow boarding?”  Belcher and Officer Willenbrock discussed snowboarding for the next three minutes, and then at 15:08 on the DVD, Officer Willenbrock said, “I’m going to see if she is almost here.”  Belcher asked if he could put out his cigarette in his vehicle’s ashtray, and Officer Willenbrock permitted him to do so.

From 15:09 through 15:13 on the DVD, Belcher stood by himself near his vehicle while Officer Willenbrock returned to his patrol car.  A few dings are audible, indicating further text messaging between Officer Willenbrock and Officer Martin.  At 15:11 on the DVD, Belcher asked for permission to answer his cell phone, which he heard ringing in his vehicle.  Officer Willenbrock permitted Belcher to answer his phone, and the DVD shows Belcher engaged in an inaudible conversation on his cell phone.  

At 15:13 on the DVD, Officer Willenbrock returned to stand near Belcher and said, “I appreciate your patience, she’s going to be here in just a minute.”  From 15:13 until 15:21, the next eight minutes, Officer Willenbrock asked Belcher questions about snow boarding in Colorado and about hunting.  Finally, at 15:21 on the DVD, Officer Willenbrock said, “Let me go call her.”

The audio on the DVD is muted from 15:21 until Officer Martin’s arrival, at approximately 15:23, thirty-nine minutes after the 14:44 stop of Belcher.  The tape was moved from Officer Willenbrock’s vehicle to Officer Martin’s vehicle, and it shows Officer Martin approaching Belcher and saying, “I bet you’re tired of waiting for me.”  Officer Martin then began her DWI investigation,  conducting several field sobriety tests.  After Belcher failed the field sobriety tests, Officer Martin arrested him, processed him at jail, and completed all the necessary paperwork.  While Officer Martin transported Belcher to jail, Officer Willenbrock waited for the tow truck to pick up Belcher’s vehicle and then returned to his patrol duties. 

Belcher filed a motion to suppress all evidence seized as a result of the stop, alleging that he “was detained longer than necessary to accomplish the purpose of the stop” and that Officer Willenbrock failed to do an investigation and instead waited over thirty-five minutes for another officer to arrive and do the DWI investigation.  At the suppression hearing, Belcher stipulated that Officer Willenbrock’s actions in stopping him were justified at their inception, but he argued that his continued detention to wait for Officer Martin was unreasonable based on the totality of the circumstances given that Officer Willenbrock was fully qualified to conduct the investigation himself. 

The trial court overruled Belcher’s motion to suppress and made the following findings of fact and conclusions of law: 

Findings of Fact

1. On December 31, 2005, Officer Willenbrock initiated a traffic stop of the Defendant’s vehicle for traffic violations including excessive speed, failure to maintain a single lane and failing to signal lane changes.  Officer Willenbrock was further concerned that the Defendant may be intoxicated due to the observed driving behavior.

2. Upon making the traffic stop, Officer Willenbrock made contact with the driver, the Defendant, and noticed an odor of alcohol coming from the Defendant’s person, the slurred speech of the Defendant and the Defendant’s red and glassy eyes.

3. Officer Willenbrock had the Defendant exit the vehicle to begin a DWI investigation.  During the first few minutes of conducting his DWI investigation, Officer Willenbrock contacted Officer Martin requesting her assistance in performing the DWI investigation, as his normal DWI investigation would have taken him at least (4) four hours to complete. 

4. Officer Martin arrived between thirty and thirty-five minutes after receiving the initial call from Officer Willenbrock to come to the location of the Defendent Belcher.  Once on the scene Officer Martin took over the DWI investigation.  During the waiting period, Officer Willenbrock asked questions of the Defendant which he considered pertinent to his DWI investigation but did not perform any field sobriety tests.

5. Officer Martin did not take any unnecessary or unreasonable delay in reaching the scene.  Upon her arrival Officer Martin performed her DWI investigation in an efficient and timely manner and subsequently arrested the Defendant for DWI.

6. Officer Willenbrock is a patrol officer for the Denton Police Department whose duties include all facets of traffic enforcement, as well as, responding to reported criminal activities and regular calls for service from dispatch while on duty.  Officer Martin’s primary duties consist of DWI enforcement, including but not limited to, assisting other Denton Police Officers in conducting DWI investigations.

7. Officer Martin testified that she has more experience and training in DWI investigations than Officer Willenbrock.  She further testified that, because of her training and experience, it takes her approximately two hours to complete a DWI investigation.

8. The Court finds all testimony of both Officer Willenbrock and Officer Martin credible and reliable. 

Conclusions of Law

1. The Court finds that based on the totality of the circumstances that Officer Willenbrock had reasonable suspicion to stop the Defendant’s vehicle for traffic violations and was further permitted to conduct an investigative detention for the misdemeanor offense of DWI.

2. The Court further finds that based on the totality of the circumstances that Defendant Belcher’s rights were not violated by the thirty (30) to thirty-five (35) minute delay in the response time by Officer Martin to the scene.

3. The Court further finds that there were legitimate law enforcement purposes served by requesting Officer Martin to respond to the scene: (1) a more experienced DWI officer would handle the DWI investigation; (2) the investigation time would be shortened by at least one-half; and (3) allowed Officer Willenbrock to be available to receive other calls for police related services.

4. Based on the totality of the circumstances the initial stop by Officer Willenbrock and Officer Martin’s arrival was not unreasonable. 

Based on the foregoing findings, the Court concludes that the suppression of evidence, of which suppression is sought, is admissible and the defendant’s motion to suppress the evidence is in all things DENIED.

After the trial court overruled his motion to suppress, Belcher pleaded no contest to the DWI charge.  The trial court assessed Belcher’s punishment at 150 days in jail, suspended for eighteen months of community supervision, with a $500 fine.  Belcher now appeals.

III.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  

Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact, even if the trial court’s determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Montanez v. State
, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); 
Johnson v. State
, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  The deferential standard of review applies to a trial court’s determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing.  
Montanez
, 195 S.W.3d at 109. 
But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court’s ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court’s ruling.  
State v. Kelly
, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court’s ruling, supports those fact findings.  
Id
. at 818–19.  We then review the trial court’s legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  
Id
. at 819.

IV.  Reasonableness of the Detention

In his first point, Belcher argues that the trial court should have granted his motion to suppress because the delay in Officer Willenbrock’s DWI investigation while they both waited for Officer Martin’s arrival rendered the continued detention unreasonable under the Fourth Amendment.
(footnote: 4)  Belcher does not challenge the propriety of the initial stop, but argues only that his subsequent detention became unreasonably lengthy, and hence, unlawful.  The State responds that the delay in Officer Willenbrock’s investigation ultimately promoted legitimate law enforcement purposes and that, therefore, Belcher’s continued detention was not unreasonable under the Fourth Amendment.

On appeal, the question of whether a specific search or seizure is “reasonable” under the Fourth Amendment as applied to the historical facts found by the trial court is subject to de novo review.  
Kothe v. State
, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004).  Thus, in deciding whether Belcher’s continued detention to await the arrival of Officer Martin was “reasonable” under the specific circumstances presented, we view the trial court’s factual findings in the light most favorable to his ruling, but we decide the issue of “reasonableness” as a question of Fourth Amendment law. 
 Id
. at 63.

A.  An Officer’s Ability to Detain a Citizen

The Fourth Amendment protects against unreasonable searches and seizures.  U.S. 
Const
. amend. IV.  
It is well settled in Fourth Amendment jurisprudence that absent a warrant or some functional equivalent giving probable cause to arrest, only a limited, investigatory detention of an individual is permitted.  
Burkes v. State
, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991). 
 An investigative detention during the course of a traffic stop in which the subject is not free to leave is a seizure for purposes of the Fourth Amendment, and the appellate court must analyze the stop under the reasonableness standard.  
Whren v. United States
, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772 (1996).

Under 
Terry v. Ohio
, the determination of whether an investigative detention is reasonable is a two-pronged inquiry: whether the officer’s action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.  
392 U.S. 1, 19–20, 88 S. Ct. 1868, 1879 (1968).  
This determination is a factual one and is made and reviewed by considering the totality of the circumstances existing throughout the detention.  
Loesch v. State
, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997); 
see Kothe
, 152 S.W.3d at 63.

B.  Detention During Delay in Investigation

Although the length of a detention may render a traffic stop unreasonable, there is no rigid, bright-line time limitation.  
United States v. Sharpe
, 470 U.S. 675, 679, 105 S. Ct. 1568, 1571 (1985).  Instead, common sense and ordinary human experience must govern over rigid criteria.  
Id.
 at 685, 105 S. Ct. at 1575.  The reasonableness of the duration of a detention depends on whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.  
Id.
 at 686, 105 S. Ct. at 1575.  In determining the reasonableness of the duration of a detention, 
the trial and appellate courts may consider legitimate law enforcement purposes served by any delay in the officer’s investigation.  
Id.
 at 685, 105 S. Ct. at 1575.  Fourth Amendment reasonableness requires a balance between the public interest served and the individual’s right to be free from arbitrary detentions and intrusions.  
Kothe
, 152 S.W.3d at 63.

Following these controlling decisions, Texas courts likewise have held that a delay in an officer’s required investigation to confirm or dispel the officer’s suspicions of the suspect and a resultant prolonged detention is reasonable under the Fourth Amendment when the delay furthers legitimate law enforcement purposes.  
See, e.g.
, 
Hartman v. State
, 144 S.W.3d 568, 573 (Tex. App.—Austin 2004, no pet.) (holding five-to fifteen-minute delay in DWI investigation primarily so that another officer could bring a video camera to the scene was reasonable because delay furthered legitimate law enforcement purposes); 
Smith v. State
, No. 03-06-00085-CR, 2007 WL 700834, at *1 (Tex. App.—Austin Mar. 7, 2007, pet. ref’d) (mem. op.) (not designated for publication) (holding delay in DWI investigation primarily for arrival of rookie officer for purpose of training was reasonable because delay furthered legitimate law enforcement purposes); 
Dickson v. State
, No. 03-06-00126-CR, 2006 WL 3523789, at *1, 4 (Tex. App.—Austin Dec. 6, 2006, no pet.) (mem. op.) (not designated for publication) (holding approximately twenty-minute delay in DWI investigation primarily to await arrival of DWI enforcement officer was reasonable because delay furthered reasonable law enforcement purposes).      
In the
 Hartman
 case, an officer stopped Hartman for speeding, but after speaking with Hartman became concerned that he was intoxicated.  144 S.W.3d at 570.  The officer was qualified to conduct a DWI investigation but radioed for another officer to come to the scene with a video camera so that Hartman’s performance during sobriety tests could be recorded in accordance with department policy.  
Id
.  Although the trial court did not make explicit findings of fact, the appellate court held that the officer’s purposes for the delay were to secure the scene, to comply with department procedure, and to ensure officer safety.  
Id.
 at 573.  Because of these legitimate law enforcement purposes for the delay, the appellate court held that Hartman’s continued detention during the delay in the DWI investigation was not unreasonable and that his Fourth Amendment rights were not violated.  
Id.

In the 
Smith
 case, an officer pulled Smith over for erratic driving and, upon approaching the vehicle, became concerned that Smith was intoxicated.  
2007 WL 700834, at *1.  Although the officer was qualified to perform DWI investigations, he chose instead to call a rookie officer to the scene to conduct the investigation as on-the-job training.  
Id.
  Twenty-six minutes elapsed between the time of the stop and the time when the rookie arrived at the scene.  
Id.
  In holding that this delay in the DWI investigation did not render Smith’s continued detention unreasonable under the Fourth Amendment, the appellate court noted that the first officer was a shift supervisor and that turning the DWI investigation over to the rookie officer served the legitimate law enforcement purposes of not only training the rookie but also of allowing the shift supervisor to return to his supervisory duties to assist other officers under his supervision.  
Id.
 at *4.

Finally, in the 
Dickson
 case, an officer pulled over a vehicle driven by Dickson, an assistant district attorney, on suspicion of DWI.  2006 WL 3523789, at *1, 4.  Because Dickson identified himself as an assistant district attorney immediately upon being stopped, the officer—who was fully qualified to conduct DWI investigations—called his supervisor, and the supervisor instructed the officer to call a DWI enforcement officer to conduct the DWI investigation. 
 Id. 
at *1.  Eight minutes elapsed between the initial stop and the officer’s call for the DWI enforcement officer; twenty more minutes elapsed before the DWI enforcement officer arrived at the scene. 
 Id. 
 The appellate court held that the continued detention of Dickson during the twenty-minute delay in the DWI investigation was reasonable because it furthered the legitimate law enforcement purposes of 
involving an officer who would bring greater expertise to the scene and who could complete the DWI investigation more rapidly.  
Id.
 at *4.  The appellate court held that the delay did not render the detention unreasonable because it was department policy to call the DWI enforcement officer to the scene.  
Id.

C.  Application of the Law to the Present Facts

From the initial stop of Belcher at 14:44 on the DVD until twelve minutes later, at 14:56 on the DVD, Officer Willenbrock asked Belcher routine questions that were related in scope to Belcher’s detention for the traffic offenses and to a DWI investigation.  This portion of Belcher’s detention was unquestionably reasonable and did not violate any aspect of the Fourth Amendment.  
See
, 
e.g., Kothe
, 152 S.W.3d at 63 (discussing police actions that may be taken in connection with traffic stop).  

For the next twenty-seven minutes,
(footnote: 5) from 14:56 on the DVD until Officer Martin arrived at 15:23 on the DVD, a delay in the DWI investigation occurred; Officer Willenbrock’s questioning of Belcher pertained to snow boarding and hunting.  It is this twenty-seven minute time period that Belcher claims violated his Fourth Amendment rights because—although Officer Willenbrock was fully qualified to conduct the DWI investigation—Officer Willenbrock was no longer investigating the traffic offense and was not further investigating a possible DWI offense.  According to Belcher, in the absence of an investigation, reversal is required under 
Hartman
.  
144 S.W.3d at 574.  

Although the appellate court in 
Hartman
 explained that “[a]n investigative detention requires an actual investigation; where no investigation is undertaken, the detention cannot be considered investigatory,” the appellate court in 
Hartman 
did not equate a delay in the investigation for legitimate law enforcement purposes with no investigation.  
Id
. at 572.  Ultimately, the
 Hartman
 court held that the continuation of a valid detention for a brief period of time to further legitimate law enforcement purposes was reasonable under the Fourth Amendment.  
Id.
 at 573.  Legitimate law enforcement purposes include a delay to permit the arrival of a DWI enforcement officer so that the supervisory officer initiating the stop can return to duty, a delay for the arrival of a video camera so that the DWI investigation and the field sobriety tests can be taped in accordance with department procedures, and a delay for the arrival of a rookie officer who needs training.  
Id.
;
 Smith
, 2007 WL 700834, at *4; 
Dickson
, 2006 WL 3523789, at *4. 

Here, Officer Willenbrock testified, and the DVD reflects, that when he spoke with Belcher at the inception of the stop, Officer Willenbrock formed a reasonable suspicion that Belcher was intoxicated.  Consequently, Officer Willenbrock asked Officer Martin to come to the scene and conduct a DWI investigation.  Although Officer Willenbrock did not conduct field sobriety tests, the trial court made a fact finding, and the DVD reflects, that Officer Willenbrock asked Belcher questions in furtherance of the DWI investigation; he questioned Belcher concerning whether he had been drinking, where he had been prior to the stop, and where he was going.  Both Officers Willenbrock and Martin testified that Officer Martin possessed greater expertise in DWI investigations and was able to complete such investigations more efficiently than Officer Willenbrock.  The trial court made a fact finding that it would have taken Officer Willenbrock four hours to complete the DWI investigation but that it takes Officer Martin only two hours to complete a DWI investigation.  Thus, the record viewed in the light most favorable to the trial court’s ruling reflects that a DWI investigation was underway when Officer Willenbrock requested Officer Martin’s assistance at the scene and that a legitimate law enforcement purpose was served by the delay in the DWI investigation that occurred while awaiting the arrival of Officer Martin.  
See, e.g.
, 
Hartman
, 144 S.W.3d at 573; 
Smith
, 2007 WL 700834, at *1 (same); 
Dickson
,  2006 WL 3523789, at *1, 4 (same).

Having held that the record supports the trial court’s determination that a DWI investigation was underway and that the reason for the delay in the DWI investigation was to further a legitimate law enforcement purpose, we next examine whether the length of the delay, given the totality of the circumstances, nonetheless rendered Belcher’s continued detention unreasonable under the Fourth Amendment.  We agree with Belcher that the apparent twenty-seven minute delay he experienced waiting for the arrival of Officer Martin approaches the edge of reasonableness under the Fourth Amendment.  But applying the fact-specific Fourth Amendment standard for reasonableness, we note that the record shows Officer Willenbrock expected Officer Martin to arrive within approximately five minutes of his initial call.  He later learned that Officer Martin had been delayed at the stop of another suspect but was “still intending on coming to my location.”  Officer Willenbrock contacted Officer Martin at least four times—at least twice during this twenty-seven minute period—in an attempt to ascertain Officer Martin’s whereabouts and her estimated time of arrival on the scene.  The record reflects that Officer Willenbrock continually expected Officer Martin to arrive at any minute.  Additionally, Officer Willenbrock permitted Belcher to smoke and to answer his cell phone during the detention, thus reducing to some extent the level of intrusion generated by the detention. 

Balancing the public interest served with Belcher’s Fourth Amendment right to be free from arbitrary detentions and intrusions, as we must, and giving almost total deference to the trial court’s historical fact findings, as we must, and viewing all of the evidence in the light most favorable to the trial court’s ruling, as we must, we cannot conclude as a matter of Fourth Amendment law that, given the totality of the circumstances—including Officer Willenbrock’s close monitoring of Officer Martin’s whereabouts and estimated time of arrival at the scene and the legitimate law enforcement purposes served by waiting for Officer Martin—the continued detention of Belcher, while awaiting Officer Martin’s arrival, was unreasonable.  
See Sharpe
, 470 U.S. at 679, 105 S. Ct. at 1575;
 Montanez
, 195 S.W.3d at 108-09; 
Kothe
, 152 S.W.3d at 63; 
see also Hartman, 
144 S.W.3d at 570 (five-to fifteen-minute delay to await arrival of video camera)
; Smith
, 2007 WL 700834, at *4 (twenty-six minute delay to await arrival of rookie officer); 
Dickson
, 2006 WL 3523789, at *4 (twenty-minute delay to await arrival of DWI enforcement officer).  We overrule Belcher’s first point.

V.  Competency of Officer Testimony

In his second point, Belcher argues that Officer Willenbrock was not competent to testify at the suppression hearing because he “had no independent recollection of the night’s events and therefore no articulable reasonable suspicion and thus no basis to treat the stop as a DWI investigation, rather than the original purpose of investigating a traffic violation.”  Specifically, Belcher argues that Officer Willenbrock’s lack of independent knowledge of the night’s events made him not competent as a witness under Texas Rule of Evidence 601. 

Texas Rule of Evidence 101(d)(1)(A) mandates that the rules of evidence do not apply in criminal proceedings (except with respect to privileges) to “the determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under [r]ule 104.”  
Tex. R. Evid.
 101(d)(1)(A).  In turn, rule 104 states that 

[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court . . .  In making its determination the court is not bound by the rules of evidence except those with respect to privileges.

Tex. R. Evid.
 104.

In interpreting this language, the court of criminal appeals has held that because suppression hearings involve the determination of preliminary questions referenced in rule 104, the rules of evidence (except for those rules concerning privileges) do not apply to suppression hearings.  
Granados v. State
, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002).  Accordingly, the trial court did not err by allowing testimony during the suppression hearing without considering whether such testimony violated the rules of evidence.  
Therefore, we overrule Belcher’s second point.
(footnote: 6)
VI.  Conclusion

Having overruled both of Belcher’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: LIVINGSTON, WALKER, and MCCOY, JJ.

PUBLISH

DELIVERED: December 20, 2007

FOOTNOTES
1:
In several places on the DVD of Belcher’s stop, while Officer Willenbrock is in his patrol car, a dinging sound is audible.  At the suppression hearing, Officer Willenbrock identified this sound as text message chimes that were made when he sent a text message to or received one from Officer Martin. 

2:
As Officer Willenbrock noted, the times of the DVD are inverted.  Thus, 14:44, for example, references 2:44 a.m. rather than 2:44 p.m.

3:
Belcher testified at the suppression hearing that the temperature that evening was in the 30s; Officer Martin testified that it was “cold.”

4:
Where, as in this case, the appellant has not separately briefed state and federal constitutional claims, we assume that the appellant claims no greater protection under the state constitution than that provided by the federal constitution.  
Muniz v. State 
851 S.W.2d 238, 251-52 (Tex. Crim. App. 1993); 
Varnes v.  State
, 63 S.W.3d 824, 829 (Tex.  App.—Houston [14th
 Dist.] 2001, no pet.).  Therefore, we will analyze Belcher’s claim solely under the Fourth Amendment of the United States Constitution, following guidelines set by United States Supreme Court in interpreting the Fourth Amendment.  
See State v. Guzman
, 959 S.W.2d 631, 633 (Tex.  Crim.  App. 1998).

5:
Belcher characterizes his unlawful detention as lasting thirty to thirty-five minutes.   But because Belcher does not challenge the legality of the initial stop, it necessarily follows that a valid investigative detention based on the traffic violations and possible DWI occurred for some period of time after the valid stop.  The DVD shows that at least the first twelve minutes of the stop involved a proper investigative detention of Belcher for the traffic offenses and for a possible DWI.

6:
Additionally, the record reflects that Officer Willenbrock did possess an independent recollection of his suspicion that Belcher was intoxicated based on Belcher’s outward appearance and the odor of alcohol emanating from Belcher and his vehicle.  Officer Willenbrock testified:

Q. Did you eventually pull the vehicle over?

A. Yes, sir, I did.

Q. Did you make contact with the driver?

A. I did.

Q. Could you please identify him by an article of clothing that he’s wearing?

[witness complies]

Q. When you fist made contact with the defendant did you make any observations about him?

A. Yes, sir.

Q. What were those?

A. I noticed that he had an outward appearance of intoxication as well as the odor of alcohol coming from the vehicle and from the person after I asked him to step out.

On cross-examination, Officer Willenbrock testified:

Q. You indicated from his outward appearance that you believed  Brett to be intoxicated?

A. Yes.

Q. Did you create any type of report regarding the stop?

A. No, I did not.

Q. So when you say outward appearance, that’s just based on  your recollection that night?

A. Yes.