Opinion issued October 6, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00504-CR

———————————

Michael Paul Everitt, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the Harris County Criminal Court at Law No. 4

Harris County, Texas



Trial Court Case No. 1655755

 



 

MEMORANDUM OPINION

A jury convicted appellant Michael Paul Everitt of
driving while intoxicated.  See Tex.
Penal Code Ann. § 49.04(a) (West 2011). 
The court assessed a $2,000 fine and sentenced him to 180 days in
jail.  The court suspended the jail
sentence and placed him on community supervision for 2 years.  Everitt asserts three issues on appeal, two
relating to failed motions to suppress evidence and one relating to expert
testimony.  We affirm the judgment.

Background

At approximately 2:30 a.m. on January 22, 2010, Houston Police Department
Officer A. Richberg was driving his patrol car eastward on Interstate 610 when
he noticed a Yamaha R6 motorcycle
in front of him speeding and weaving lanes without signaling.  Officer Richberg accelerated to 90 miles per
hour to catch up with the motorcycle. 
Everitt, the motorcyclist, slowed to 60 miles per hour on the northbound
ramp to Highway 288, and he then reaccelerated to 80 miles per hour while
tailgating another HPD vehicle. 
Concerned for the safety of the motorist and other vehicles on the road,
Officer Richberg pulled Everitt to the side of the freeway.  Richberg testified at trial that the initial
infractions motivating the stop were reckless driving and expired license
plates.

After pulling the motorcycle over, Officer Richberg noticed several signs
that Everitt might be intoxicated.  The
smell of alcohol emanated from his helmet, Everitt had difficulty maintaining
his balance, and he made multiple failed attempts to engage his motorcycle’s
kickstand.  In addition, Everitt had
difficulty understanding questions, slurred his words, and had bloodshot eyes.  Officer Richberg suspected intoxication, and
he requested that Everitt perform various field sobriety tests, which Everitt
refused.  Richberg spent at least 25
minutes questioning Everitt.  Everitt admitted
to having something to drink at 5:00 p.m. the day before.  Officer Richberg called fellow HPD Officer B.
Taylor, who had more experience in administering field sobriety tests.  Richberg thought that she might better
persuade Everitt to consent.

Officer Taylor arrived at the scene by 3:30 a.m., approximately 10
minutes after receiving Richberg’s request for her assistance.  She smelled alcohol on Everitt’s breath and
noticed that he could not stand without swaying, slurred his words, and had
glassy eyes.  Everitt repeatedly asked
questions of Officer Taylor that she considered “inappropriate,” such as how
long she had been working for HPD, and he told Taylor personal information
about his wife.  Officer Taylor
ultimately arrested Everitt for driving while intoxicated and put him into the
back of her patrol car where the smell of alcohol became “[a]lmost
overwhelming.”

At approximately 3:45 a.m., Officer Taylor brought Everitt to the “Intox
Room” at the police station where an HPD sobriety test administrator asked him
to perform multiple sobriety tests. 
While being video-recorded, Everitt submitted to the first sobriety test
requested of him, the Rhomberg test, in which the subject
is asked to close his eyes, tilt his head back, and estimate when 30 seconds
have passed.  Based upon Everitt’s
swaying while undergoing the test, the HPD test administrator judged him to be
impaired.

Everitt refused two other sobriety tests. 
Officer Taylor and the test administrator asked whether Everitt had any
injuries, and he responded that he had taken “hydrocodeine . . . earlier today
maybe” due to a back injury.  Expert
testimony at trial established that “hydrocodeine” is a
common misnomer for hydrocodone, or Vicodin. 
Within two minutes of the
reference to Everitt’s hydrocodone use and back injury, the test administrator
read Everitt his rights.

Analysis

I.                 
Length of detention

Everitt
argues in his first issue that the trial court erred when it denied his motion
to suppress all the evidence arising from his arrest.  Though he concedes that the stop
by Officer Richberg was valid, Everitt contends
that his pre-arrest detention on the side of the road lasted unreasonably long
and thus violated the Fourth Amendment to the U.S. Constitution.

In
reviewing the trial court’s ruling on a motion to suppress evidence,
we apply a bifurcated standard of review. 
Carmouche v.
State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000).  While we give almost total deference to the
trial court’s determinations of historical facts, we review the application of
the law of search and seizure de novo.  Id.  We must sustain the trial court’s ruling if it is reasonably supported by the record
evidence and is correct under any theory of law applicable to the case.  State v. Ross, 32 S.W.3d
853, 855–56 (Tex. Crim. App. 2000).  A
trial court’s ruling on the admissibility of evidence is reviewed for an abuse
of discretion, that is, whether the court’s ruling was within the zone of
reasonable disagreement.  Moses v. State, 105 S.W.3d 622, 627
(Tex. Crim. App. 2003); Thomas v. State,
336 S.W.3d 703, 711 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d).

The reasonableness of
the length of an investigative detention for Fourth Amendment purposes depends
upon the diligence of the police to confirm or dispel its suspicion of criminal
culpability, and upon whether the police reasonably declined to pursue an
alternative means of accomplishing its law-enforcement objective.  United
States v. Sharpe, 470 U.S. 675, 686–87, 105 S. Ct. 1568, 1575–76 (1985); see also Smith v. State, 945 S.W.2d 343,
346 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d).  In conducting its analysis, the court should
consider the circumstances of the “developing situation” and “should not
indulge in unrealistic second-guessing.” 
Sharpe, 470 U.S. at 686, 105
S. Ct. at 1575.  In Sharpe, the United States Supreme Court found that no unreasonably
long detention had taken place when the duration was exacerbated by the
suspect’s own “evasive actions.”  Id. at 688, 105 S. Ct. at 1576; see also United States v. Montoya de
Hernandez, 473 U.S. 531, 544, 105 S. Ct. 3304, 3112 (1985) (holding that a
criminal suspect’s 16-hour “long, uncomfortable, indeed, humiliating” detention
by federal border agents was not unreasonable since she authored the
circumstances of her own detention); Smith,
945 S.W.2d at 347 (finding that suspect’s detention was not unreasonably long
when its length was “attributable almost entirely” to him).

The police in this
case did not detain Everitt for an unreasonably long period.  Upon stopping Everitt, Officer Richberg
undertook several time-consuming tasks lasting at least 25 minutes, including
routine requests such as asking for Everitt’s license, asking Everitt questions
relating to his recent drinking, requesting Everitt to submit to various
sobriety tests, explaining what those tests entailed, and eventually calling on
Officer Taylor to come assist him. 
Richberg’s decision to call for Taylor added to Everitt’s detention time
but was not unreasonable, since she had more experience in DWI investigations
than he did.  Although there was
conflicting testimony at trial concerning the amount of time that Officer
Taylor took in getting to the scene, there is nothing in the record to indicate
that she procrastinated, or that upon her arrival she conducted herself in a
less than diligent manner.  When there is
no evidence that the police failed to diligently pursue an investigation while
conducting a valid stop, a court should find that the length of the detention
was reasonable.  See Kothe v. State, 152 S.W.3d 54, 66 (Tex. Crim. App. 2004)
(holding that length of investigative detention was reasonable when record
showed neither lack of diligence nor improper motive by police).

Moreover, Everitt
cannot complain about an unreasonably lengthy detention because much of the
temporal excess, if any, was caused by Everitt himself.  Officer Richberg testified that he had to
repeat questions multiple times until Everitt would appear to understand.  When Everitt did respond to questions, he
would, according to Richberg, “dodge” them by not answering directly.  According to Officer Taylor, Everitt spent approximately
10 minutes asking her impertinent questions and bringing up his own personal
matters.  Since Everitt’s confused and
evasive interaction with police likely contributed to the length of his
pre-arrest detention, he cannot use those self-created delays as a basis for
his motion to suppress.  See Smith, 945 S.W.2d at 347.

Everitt argues that no
legitimate law enforcement interest was served by calling Officer Taylor, who
took perhaps as long as 30 minutes to arrive at the scene, because all that she
ultimately did was make the same observations as Richberg regarding Everitt’s
intoxication.  He correctly argues that a
prolonged investigative detention must be justified by a legitimate law
enforcement interest.  E.g., Belcher v. State, 244 S.W.3d 531, 539 (Tex. App.—Fort Worth 2007,
no pet.); Hartman v. State, 144
S.W.3d 568, 572 (Tex. App.—Austin 2004, no pet.).  A legitimate law enforcement interest is
served, however, when a junior police officer calls on a more senior colleague
to assist in a DWI investigation to draw on the senior colleague’s greater
experience, even when it lengthens the detention time.  Cf.
Belcher, 244 S.W.3d at 541 (“Legitimate law enforcement purposes include a
delay to permit the arrival of a DWI enforcement officer so that the
supervisory officer initiating the stop can return to duty, a delay for the
arrival of a video camera so that the DWI investigation and the field sobriety
tests can be taped in accordance with department procedures, and a delay for
the arrival of a rookie officer who needs training.”).  Thus, the evidence relied upon by Everitt does
not show that Officer Richberg had any illegitimate purpose in making the call
to Officer Taylor.

Given the totality of
circumstances surrounding Everitt’s detention, we hold that it did not last for
an unreasonably long time.  See Belcher, 244 S.W.3d at 534, 542
(finding that “totality of circumstances” pointed to no unreasonable delay when
first officer investigating DWI waited 27 minutes for second officer to
arrive).  Therefore, we find that the trial
court did not abuse its discretion by denying Everitt’s motion to suppress
evidence.

We
overrule appellant’s first issue.

II.              
Unconstitutionally elicited
statement

In his second issue, Everitt argues that HPD elicited his statement about
having used hydrocodone without first advising him of his rights, in violation
of the U.S. Constitution and the Code of Criminal Procedure.  He contends that the trial court therefore
should have sustained his motion to suppress that statement.  As we already stated regarding Everitt’s
first issue, in reviewing a denial of a motion to suppress evidence, we defer to the trial court’s determinations of historical facts
while we review the application of the law de novo.  Carmouche,
10 S.W.3d at 327.  A trial court’s ruling
on the admissibility of evidence is reviewed for an abuse of discretion.  Moses,
105 S.W.3d at 627; Thomas, 336 S.W.3d
at 711.

Under Miranda, a criminal
suspect in police custody must be advised about his right against
self-incrimination prior to the start of interrogation.  Miranda
v. Arizona, 384 U.S. 436, 467–69, 86 S. Ct. 1602, 1624–25 (1966).  The Code of Criminal Procedure similarly
requires that, for a recorded oral statement elicited during custodial
interrogation to be admitted at trial, certain statutory warnings must first be
given.  Tex.
Code Crim. Proc. Ann. art. 38.22 § 3(a) (West 2005).  Questions reasonably likely to elicit an
incriminating response constitute interrogation.  Rhode
Island v. Innis, 446 U.S. 291, 301, 100 S. Ct. 1682, 1690 (1980).  Questions normally attendant to arrest and
custody are not interrogation, nor are requests to perform non-testimonial
tests or tasks.  Id. at 301, 100 S. Ct. at 1689–90; Jones v. State, 795 S.W.2d 171, 176 (Tex. Crim. App. 1990).  Visual and aural recording of a subject
performing sobriety tests “is merely another example of the collection of
physical evidence” by police.  Jones, 795 S.W.2d at 175.

It is undisputed that Everitt’s admission was made while in police
custody and during attempted sobriety tests under videorecording, but before he
received the statutory warnings of Article 38.22 of the Code of Criminal
Procedure.  Thus, the question presented
is whether an interrogation had begun when Everitt admitted using
hydrocodone.  Officer Taylor escorted Everitt
to the “Intox Room” where an HPD civilian agent was waiting to perform sobriety
tests.  The crucial excerpt of his
videotaped interaction between Everitt, the HPD agent, and Officer Taylor shows
the following exchange:

Agent:    You
understand those instructions?

Everitt:   Yeah,
I just don’t think I can do that.

Agent:    You
don’t think you can do it.  You don’t
want to try to do it?  Okay.

Taylor:   Do
you have any knee injuries or anything?

Everitt:   It’s
just that, uh, my back is hurting and I’m just not very good –

Taylor:   It’s
the lower back?

Everitt:   Yes.  It’s just –

Agent:    You
know what injury?  You do?

Everitt:   I’m
taking hydrocodeine for my, my back. 
It’s from –

Agent:    Oh,
okay.  When’s the last time you took
that?

Everitt:   It’s
about, what, earlier today maybe.

Agent:    You
know about what time?

Everitt:   No.

Agent:    No.

Taylor:   Is it
like a bulging disk or –

Everitt:   It’s
just on my lower back.  I don’t really
know if it’s a disk or not.  It’s just,
it hurts.

The medical
condition of someone performing a sobriety test may affect the validity of that
test.  Thus, the HPD agent and Officer
Taylor asked Everitt questions attendant to a non-testimonial sobriety test
that they sought to administer.  Everitt
responded with more information than the questions about the existence of
injuries would normally elicit.  There is
no evidence that the agents intended to elicit an incriminating response about
Everitt’s prescription drug use or otherwise. 
Therefore, an interrogation had not yet begun.

When a criminal suspect volunteers incriminating information before
interrogation, as Everitt did, Article 38.22 does not prevent using that
statement against him at trial regardless of whether he has been given the
required warnings.  See East v. State, 702 S.W.2d 606, 613–14 (Tex. Crim. App. 1985)
(holding that Article 38.22 allowed admission of custodial suspect’s
incriminating statement despite lack of Miranda
warning because surrounding circumstances showed no interrogation).  We conclude that Everitt gave his statement about
having used hydrocodone prior to the beginning of interrogation.  Accordingly, the trial court properly denied
Everitt’s motion to suppress the recorded statement about his hydrocodone use.

          We overrule appellant’s second issue.

III.          
Admissibility of admission of use
of medication

Everitt argues in his third and last issue that the trial court
improperly admitted his video-recorded admission of hydrocodone use because the
State failed to lay a proper foundation for its relevance.  See
Layton v. State, 280 S.W.3d 235, 241–42 (Tex. Crim. App. 2009) (holding
that State failed to show relevance of DWI defendant’s admission about taking
Xanax and Valium because no expert testimony had been offered on dosage, timing
of ingestion, or half-life of drugs).

The State called HPD Officer LaSalle as an expert witness to testify
about the intoxicating effects of hydrocodone and alcohol use.  Prior to admitting Officer LaSalle’s
testimony, the court held a hearing on his qualifications and probable
testimony outside the jury’s presence.  See Kelly v. State, 824 S.W.2d 568, 573
(Tex. Crim. App. 1992) (establishing that when admissibility of expert
testimony is contested, expert testimony must be vetted by court outside jury’s
presence using three-prong test). 
Officer LaSalle testified at that hearing that he has been certified as
a Drug Recognition Expert and that he could relate how hydrocodone and alcohol
impair the body.  Officer LaSalle further
stated that as part of his training, he had learned how to perform field
sobriety tests that isolate the source of a person’s impairment, that is,
whether a person was impaired by alcohol alone, a drug alone, or a combination
of drugs and alcohol.  He then testified
that he could identify “any possible general indicators” of intoxication from
alcohol or hydrocodone by watching a videorecording of a person perform
sobriety tests, but he did not say whether this was in fact a valid technique
for recognizing intoxication by various drugs. 
Officer LaSalle later testified to the jury that based on viewing the
videotape of Everitt in the “Intox Room,” he “obviously showed several mental
and physical impairment signs as a result of the ingestion of a drug like
hydrocodone.”

Everitt argues that the trial court erroneously admitted his statement
about using hydrocodone because the State had failed to show the relevance of
that statement based upon a reliable expert opinion showing the connection
between his hydrocodone use and his intoxication at the time he was driving.  Essentially, Everitt insists that Officer
LaSalle needed to perform a battery of field sobriety tests to reliably
identify hydrocodone intoxication, and that merely watching the video gave
LaSalle insufficient information to allow him to form a sound opinion about
Everitt’s hydrocodone intoxication.

Everitt has not properly preserved this issue for appeal.  As a general prerequisite to presenting an
issue for appellate review, the record must show that a timely objection was
made to the trial court, and that the trial court ruled on the objection.  Tex.
R. App. P. 33.1; Ethington v.
State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (“[I]f, on appeal, a
defendant claims the trial judge erred in admitting evidence offered by the
State, this error must have been preserved by a proper objection and a ruling
on that objection.”).  The motion to
suppress Everitt’s statement about his hydrocodone use asserted that “without
competent expert testimony, any statements he made with respect to his use of
hydrocodeine [sic] are irrelevant.” 
Everitt re-urged this point during the Kelly hearing on the admissibility of Officer LaSalle’s testimony,
arguing that LaSalle’s own testimony did not establish that he could form a
reliable opinion.

However, Everitt obtained no ruling on the admissibility of LaSalle’s
opinions based on his review of the videorecording.  Rather, the trial court merely ruled that
Everitt’s admission of hydrocodone use was relevant, not unfairly prejudicial,
and therefore admissible.  This ruling
was expressly based upon evidence supporting LaSalle’s assumption that the drug
had been taken within two and a half hours before Everitt’s detention and
LaSalle’s unchallenged opinion that the effects of hydrocodone last from six to
eight hours and, combined with alcohol consumption, would cause slow mental and
physical reactions while driving a motorcycle. 
The trial court never ruled on the reliability of LaSalle’s analysis
based on reviewing the videorecording or the admissibility of his opinions
based on that analysis.

Once Officer LaSalle was called to testify before the jury, Everitt did
not object to any opinion elicited by the State.  Thus, Everitt failed to preserve any issue
for our review about particular opinions expressed by Officer LaSalle.

We overrule appellant’s third issue.

Conclusion

          Finally, we note that the trial
court’s judgment does not accurately comport with the record in that it shows
the case number as “165575501010,” whereas the information and all other
documents filed in the trial court show the case number as “1655755.”  “[A]n appellate court has authority to reform
a judgment to include an affirmative finding to make the record speak the truth
when the matter has been called to its attention by any source.”  French
v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (citing Asberry v. State, 813 S.W.2d 526, 529
(Tex. App.—Dallas 1991, pet. ref’d)); accord
Nolan v. State, 39 S.W.3d 697, 698
(Tex. App.—Houston [1st Dist.] 2001, no pet.) (“An appellate court has the
power to correct and reform a trial judgment to make the record speak the truth
when it has the necessary data and information to do so . . . .”); see also Tex. R. App. P. 43.2(b). 
The record supports modification of the judgment to show the correct
case number, and accordingly, the trial court’s judgment is modified to reflect
the correct case number of 1655755.




 

We affirm the judgment as modified.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists of Justices Keyes, Higley, and
Massengale.

Do not publish. 
Tex. R. App. P. 47.2(b).