

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-13-00488-CR

RICHARD DANIEL GRANDBERRY                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

### FROM THE 43RD DISTRICT COURT OF PARKER COUNTY
### TRIAL COURT NO. CR13-0014

----------

## MEMORANDUM OPINION[1]

----------

## I.      Introduction

Appellant Richard Daniel Grandberry, who pleaded guilty to attempted possession of a controlled substance (methamphetamine, 1–4 grams) in exchange for ten months' confinement, appeals the denial of his motion to suppress.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II.    Suppression

In two points, Grandberry argues that there was no reasonable suspicion to stop his vehicle and that his continued detention escalated into an arrest.

### A.  Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard, giving almost total deference to the trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor but reviewing de novo the trial court's rulings on application-of-law-to-fact questions that do not turn on the credibility and demeanor of the witnesses.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.  *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings and then review the trial court's legal ruling de novo unless its explicit fact findings

that are supported by the record are also dispositive of the legal ruling. *Kelly*,

204 S.W.3d at 818–19.

## B. Findings of Fact and Conclusions of Law

The trial court made the following findings of fact:

1. On April 29, 2011, a package was addressed to the 24-hour Pilot Truck Stop at 1201 I-20 West with the name of the recipient being the defendant, Richard Grandberry. This package was opened by a representative of the Pilot. Inside the package was a substance believed to be methamphetamine. This methamphetamine was retrieved by Officer Johnson of the Weatherford Police Department and eventually handed to Officer Bravo with the Weatherford/Parker County Special Crimes Unit who tested the suspected methamphetamine at the Sheriff's Office where it was logged into evidence.

. . . .

3. Later that evening, Officer Bravo was contacted by dispatch and informed that a representative from the Pilot had advised that a subject was at the Pilot attempting to pick up the package containing the methamphetamine. Officer Bravo and Cpl. Ramirez with the Parker County Sheriff's Department both traveled to the Pilot[2] where they were advised by the Pilot manager that the truck belonging to the person who attempted to pick up the package was identified as having a brown cab with a white trailer and the numbers 5200 on the side with an Alabama license plate.

4. The description of the vehicle driven by the defendant was a specific description.

5. Based on the totality of the circumstances, Cpl. Ramirez had reasonable suspicion to conduct an investigatory stop on the vehicle

---

[2]Officer Bravo testified that he went to the truck stop and called for another officer to meet him there because he was in an unmarked vehicle. Corporal Rameriz responded to his call as the nearest deputy to the truck stop, and Officer Bravo explained the situation to him, including that it involved a felony narcotics offense and investigation.

3

driven by the defendant and to temporarily detain the defendant pending further investigation into the methamphetamine offense.

6. Cpl. Ramirez and Officer Bravo both went along Interstate 20 looking for this vehicle.

7. Cpl. Ramirez located the vehicle and after he verified the specific identifiers of the vehicle (that the vehicle had an Alabama license plate, was a brown cab and had the numbers 5200 on the side), activated his emergency lights and initiated a stop on the vehicle.

8. Mr. Grandberry was the driver of the vehicle.

9. While waiting on Officer Bravo to arrive, Cpl. Ramirez advised the defendant that he was being detained and that an officer was en route to talk with him.

10. The defendant was not handcuffed and was standing on the side of the interstate with Cpl. Ramirez and they engaged in chit chat but did not discuss the reason for the detention.

11. Approximately 5 minutes later Officer Bravo arrived on scene and told the defendant that he was being detained and that he wanted to speak with the defendant.

12. The defendant did not indicate that he would not speak with Ofc. Bravo.

13. Officer Bravo and the defendant got into Bravo's vehicle there on the side of the Interstate and they engaged in a recorded conversation.

14. This non-custodial recorded conversation contained the Article 38.22 warnings. . . .

15. There was no search warrant for the vehicle driven by the defendant.

16. There was no arrest warrant for the defendant.

17. Ultimately, the defendant admitted that he had a friend in California mail "a teen" of methamphetamine to the Pilot in

4

Weatherford and that he was attempting to pick up the package containing the methamphetamine.[3]

18. The length of the detention of the defendant was not longer than was necessary to effectuate the purpose of the stop.

19. The defendant was not arrested on April 29th.

20. Cpl. Ramirez is a 21 year law enforcement officer with 10–11 years of narcotics experience at the state, local, and federal level.

21. Officer Bravo is a 7 year law enforcement officer with approximately 4 years['] experience with the Special Crimes Unit which is a mainly narcotics-related unit.

The trial court concluded that based on the totality of the circumstances, the officers lawfully stopped Grandberry and properly detained him for further investigation of a felony narcotics offense and that any statements that Grandberry made were freely and voluntarily given.

We have reviewed the record, and it supports the trial court's findings of fact, which in turn are dispositive of the trial court's legal ruling. *See Kelly*, 204 S.W.3d at 818–19.

---

[3]Their recorded conversation lasted around three minutes and 50 seconds. In the recording, Officer Bravo told Grandberry that he had been stopped because of the package of methamphetamine that was mailed to Grandberry at the truck stop; he then gave Grandberry his *Miranda* warnings. After he gave Grandberry his *Miranda* warnings, Officer Bravo told Grandberry that he did not have to talk to him. Grandberry asked him about going west, and Officer Bravo told him that that was a likely possibility. Grandberry said that he did not know how much methamphetamine was in the envelope but that it had been sent to him because he had asked for it to be sent to him.

## C. Analysis

In his first point, Grandberry argues that Corporal Ramirez lacked reasonable suspicion to stop his vehicle because at the time his vehicle was stopped, the truck stop's manager had not provided a physical description of him or identified him and had not informed the police that criminal activity had occurred or was occurring. In his second point, Grandberry argues that once he was stopped, he was effectively arrested. He also complains that Corporal Ramirez did not conduct an investigation between the initial stop and Officer Bravo's arrival that would lead to probable cause to arrest or reasonable suspicion for the continued detention.

### 1. Reasonable Suspicion

An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.*

This case is similar to others we have addressed that involve vehicle descriptions by third parties. *See Turley v. State*, 242 S.W.3d 178, 181 (Tex. App.—Fort Worth 2007, no pet.); *State v. Stolte*, 991 S.W.2d 336, 342 (Tex. App.—Fort Worth 1999, no pet.). A person who is not connected with the police or who is not a paid informant is considered inherently trustworthy when he advises the police that he suspects criminal activity has occurred or is occurring; when he provides self-identifying information that makes himself accountable for the intervention, the degree of reliability significantly improves. *Taflinger v. State*, 414 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (op. on reh'g). Under Texas law, there is an inverse relationship between an informant's reliability and the amount of corroboration needed to justify a stop. *Id.* at 886. Corroboration means that the officer confirms enough facts to conclude reasonably, in light of the circumstances, that the information provided is reliable and a detention is justified. *Turley*, 242 S.W.3d at 181.

In *Stolte*, for example, an officer testified that his dispatcher told him that a cell phone caller had reported a suspected DWI and had relayed that the suspect was traveling westbound on Highway 183 and exiting at Bedford Road in a red and tan Chevrolet pickup with license plate number BV4-358; the cell phone caller followed the suspect. 991 S.W.2d at 339. When the officer saw the pickup described by dispatch, he turned on his vehicle's emergency lights and siren and stopped the pickup. *Id.* at 339–40. We concluded that because the caller had given the license plate number and a specific description of the vehicle and had

7

continually updated the dispatcher on the location of the suspect's vehicle, the officer had every reason to believe that he was detaining the right person. *Id.* at 342. *Compare Turley*, 242 S.W.3d at 181–82 (holding there was reasonable suspicion to stop appellant when officer knew gas station employee who called from work to report drunk driver, continued to observe appellant's vehicle in the parking lot, and gave the officer the vehicle's make, model, color, and license plate number), *with Arguellez v. State*, 409 S.W.3d 657, 664 (Tex. Crim. App. 2013) (concluding that the officer lacked reasonable suspicion to stop appellant when the police only knew at the time of the stop that an unknown man in a described vehicle was taking photographs at a public pool, which was not an unusual, suspicious, or criminal activity), *and State v. Griffey*, 241 S.W.3d 700, 705 (Tex. App.—Austin 2007, pet. ref'd) (stating that citizen-informant did not witness a crime because his information did not allege any criminal activity).

Although Grandberry complains that the truck stop's manager did not provide any physical description of him, the manager provided a description of the vehicle driven by the person who had attempted to pick up the envelope, and this description was sufficiently specific to identify the vehicle on the interstate at night. Further, Officer Bravo and Corporal Ramirez were aware at the time of the stop that a felony—attempted possession of methamphetamine—had already been committed by the driver of the described vehicle based on previous testing of the envelope's contents and the truck stop manager's having informed them that the driver of the described vehicle had tried to claim the envelope.

8

Therefore, the trial court did not err by concluding that the initial stop was lawful, and we overrule Grandberry's first point.

## 2. Arrest

We consider the following factors when determining whether a seizure is an arrest or a detention:  the amount of force displayed; the duration of the detention; the efficiency of the investigative process and whether it is conducted at the original location or the person is transported elsewhere; the officer's expressed intent, i.e., whether he told the detained person that he was under arrest or was being detained only for a temporary investigation; the nature of the crime under investigation; the degree of suspicion; the location of the stop; the time of day; the number of suspects present; the reaction of each suspect; and whether the officer actually conducts an investigation.  *State v. Whittington*, 401 S.W.3d 263, 272 (Tex. App.—San Antonio 2013, no pet.) (citing *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008)).  Grandberry focuses on the duration of the detention and the efficiency of the investigative process.[4]

The reasonableness of the duration of a detention depends on whether the police diligently pursued a means of investigation that was likely to confirm or dispel any suspicions quickly, during which time it was necessary to detain the

_____

[4]There is no indication in the record that any amount of force was displayed, and although Grandberry had a female passenger in the truck at the time of the stop, there is no indication that she was considered a suspect or was otherwise involved.  Grandberry was not transported elsewhere, and he was allowed to depart at the conclusion of his interview with Officer Bravo.  The stop occurred on the side of the interstate around midnight.

9

defendant. *Belcher v. State*, 244 S.W.3d 531, 539 (Tex. App.—Fort Worth 2007, no pet.). A delay in an officer's required investigation to confirm or dispel his or her suspicions and a resultant prolonged detention is reasonable under the Fourth Amendment when the delay furthers legitimate law enforcement purposes, which may include securing the scene, complying with department procedure, ensuring officer safety, and bringing in officers with greater expertise who can complete an investigation more rapidly. *Id.* at 539–40; *see also Bullock v. State*, 426 S.W.3d 226, 231 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (stating that ensuring that an adequate number of patrol cars are available to respond to emergency calls and using a DWI unit that has greater experience in investigating DWIs and can perform such investigations with greater expediency is a legitimate law enforcement purpose). Delays of twenty-six minutes or longer have been found reasonable, depending on the balancing of the public interest served by the delay against the appellant's right to be free from arbitrary detentions and intrusions. *Belcher*, 244 S.W.3d at 542. When assessing whether a detention is too long in duration to be justified as an investigatory stop, if police are acting in a swiftly developing situation, the court should not indulge in unrealistic second-guessing. *United States v. Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568, 1575 (1985).

Officer Bravo testified that he had called for another officer to join him at the truck stop that evening because he was in an unmarked vehicle, and he was not in a typical police officer's uniform because of the nature of his work in the

10

Special Crimes Unit, which investigates narcotics-related offenses. Corporal Ramirez, a patrol sergeant whose main responsibility at the time of the stop was to supervise deputies and respond to "typical law enforcement" calls such as "domestics, accidents," and 911 calls,[5] was the nearest officer available to respond. He stopped the truck at Officer Bravo's direction, and he said that his responsibility that night at the stop was to back up Officer Bravo. When Corporal Ramirez stopped Grandberry, he told him that he was being detained and that an investigator, i.e., Officer Bravo, was en route to talk to him. It took around five minutes for Officer Bravo to reach them, and Corporal Ramirez stated that when Officer Bravo arrived, he "basically just ran the show from that point on."

Grandberry relies on *Wolf v. State*, which generally stands for the proposition that unparticularized hunches are insufficient to constitute the reasonable suspicion necessary to justify prolonging a detention. *See* 137 S.W.3d 797, 800–01, 804–05 (Tex. App.—Waco 2004, no pet.); *see also Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). But unlike the situation before us, *Wolf* involved a state trooper who stopped the appellant and his companion for a defective "tag lamp" and then

___

[5]Corporal Rameriz also had significant past experience in drug enforcement work. During his twenty-one years of law enforcement work (twenty of which had been with the Parker County Sheriff's office), he had spent ten or eleven years working in narcotics in a state or local capacity and four years with the Drug Enforcement Task Force in Fort Worth; he was with the Cross Timbers Narcotics Task Force Unit in the 1990s and with the DEA in the early 2000s. However, there was no testimony about his recent experience in drug investigations.

prolonged the detention for a K-9 unit to arrive—after receiving a clear warrant report—based merely on the appellant having been overly cooperative and his companion appearing nervous. 137 S.W.3d at 800–02, 804–05.

In contrast, here, the officers had more than an unparticularized hunch when they pursued Grandberry's truck with regard to the driver's commission of a drug-related felony, and the brief delay in the investigation occurred because Corporal Ramirez was waiting for the lead investigator to arrive to conduct the investigation, a legitimate law enforcement purpose. We cannot conclude, given the totality of the circumstances, that Grandberry's brief detention while awaiting Officer Bravo's arrival was unreasonable or that it became an arrest at any point: when Officer Bravo arrived, he conducted a very brief investigation in his vehicle because of the noise from the interstate, and then he allowed Grandberry to depart.[6] *See Belcher*, 244 S.W.3d at 542; *cf. Amores v. State*, 816 S.W.2d 407, 412 (Tex. Crim. App. 1991) (stating that there was no investigative detention when no one asked any questions prior to or during the search and seizure of appellant's person and vehicles); *Akins v. State*, 202 S.W.3d 879, 886–88 (Tex. App.—Fort Worth 2006, pet. ref'd) (reviewing cases in which detention was unreasonable when no investigation was undertaken). We overrule Grandberry's second point.

---

[6]Although Grandberry argues that Officer Bravo told him that he was not free to leave until the investigation was complete, that is essentially a per se definition of a temporary detention. *See Johnson v. State*, 414 S.W.3d 184, 193 (Tex. Crim. App. 2013).

12

### III.  Conclusion

Having overruled both of Grandberry's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 3, 2014