PD-1664-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/4/2015 12:19:57 PM
Accepted 2/6/2015 2:35:03 PM
ABEL ACOSTA
CLERK

# PD-1664-14

## IN THE
## COURT OF CRIMINAL APPEALS
## AT AUSTIN

————◆————

## NO. 01-13-00259-CR
## IN THE
## FIRST DISTRICT COURT OF APPEALS
## HOUSTON, TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

February 6, 2015

ABEL ACOSTA, CLERK

————◆————

## ALYSSA PULLEN,
*Appellant*
V.
## THE STATE OF TEXAS,
*Appellee*

————◆————

## CAUSE NO. 1817849
## IN COUNTY CRIMINAL COURT AT LAW NO. 4
## HARRIS COUNTY, TEXAS

————◆————

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**GARY S. MILLER**
State Bar No: 24051050
1018 Preston St., Suite 500
Houston, TX 77002
tel: (713) 223-4200
fax: (713) 568-2820
gary@millerdefense.com

## ORAL ARGUMENT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 68.4 (c), Appellant requests oral argument. Issues raised in this petition are fact specific and oral argument would allow the parties to address any concerns or questions this Court may have. The First Court of Appeals' opinion conflicts with decisions from the U.S. Supreme Court. Additionally, the issue presents an important question of law that has not yet been addressed by this Court.

## IDENTIFICATION OF THE PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 68.4(a), a complete list of the names of all interested parties is provided below.

**Counsel for the State on appeal:**

**Carly Dessauer** — Assistant District Attorney of Harris County
1201 Franklin St., Suite 600, Houston, Texas 77002

**Devon Anderson** — District Attorney of Harris County
1201 Franklin St., Suite 600, Houston, Texas 77002

**Counsel for the State at the trial court:**

**Matt Harding** — Assistant District Attorney of Harris County
1201 Franklin St., Suite 600, Houston, Texas 77002

**Coby Leslie** — Assistant District Attorney of Harris County
1201 Franklin St., Suite 600, Houston, Texas 77002

---

**Appellant:**

**Alyssa Pullen**

**Counsel for Appellant:**

**Gary S. Miller**
1018 Preston St., Suite 500, Houston, Texas 77002

**Counsel for Defendant at trial court:**

**Gary S. Miller**

**Laine D. Lindsey**

**Trial Judge:**

**Honorable  John Clinton**

3

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT……………………….……… 2

IDENTIFICATION OF THE PARTIES AND COUNSEL……..……………… 3

INDEX OF AUTHORITIES…………………………………………………… 5

STATEMENT OF THE CASE………………………………………………....7

STATEMENT OF THE PROCEDURAL HISTORY………………………………7

REASONS FOR REVIEW……………………………………………………8

GROUND FOR REVIEW……………………………………………………8

Is it reasonable under the Fourth Amendment for an officer with superior expertise conducting DWI investigations to detain a suspected intoxicated driver for thirty minutes to wait for another officer with inferior DWI expertise with no video recording equipment?…………………………………………..……..…… 9

PRAYER FOR RELIEF………………………………………………… 18

CERTIFICATE OF SERVICE……………………………………………..… 18

CERTIFICATE OF COMPLIANCE……………………………………… 19

# INDEX OF AUTHORITIES

**CASES**

*Belcher v. State,*
    244 S.W.3d at 539 (Tex. App.—Fort Worth 2007, no pet.)............................ 11, 12

*Bullock v. State,*
    No. 01-11-00347-CR (Tex. App—[1st Dist.], Nov. 21, 2012).................... 11, 12, 13

*Cady v. Dombrowski,*
    413 U.S. 433, 437 (1973)..................................................................... 14

*Florida v. Royer,*
    460 U.S. 491, 500 (1983)...................................................................... 8

*Hartman v. State,*
    144 S.W.3d 568, 572 (Tex. App.—Austin 2004)..................................... 11, 12, 14

*Kothe v. State,*
    152 S.W.3d 54, 64 (Tex. Crim. App. 2004)................................................ 14

*Michigan v. Summers,*
    452 U.S. 692 (1981)............................................................................ 8

*Sibron v. New York,*
    392 U.S. 40 (1968)............................................................................. 17

*Smith v. State,*
    No. 03-06-00085-CR, 2007 WL 700834 (Tex. App.—Austin
    Mar. 7, 2007, pet. ref.'d)(mem. op., not designated for publication)................. 11, 17

*United States v. Brigham,*
    382 F.3d 500, 511 (5th Cir. 2004)........................................................14

*United States v. Sharpe,*
    470 U.S. 675 (1985)..................................................... 8, 10, 11, 14

**RULES**

TEX. R. APP. P. 66.3 (c)....................................................................... 7

TEX. R. APP. P. 68.2 (a)....................................................................... 6

TEX. R. APP. P. 68.4(a)............................................................... 3

TEX. R. APP. P. 68.4 (c)............................................................. 2

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

**STATEMENT OF THE CASE**

Appellant was charged by information with driving while intoxicated. (CR 3). A jury convicted Appellant of the charged offense and the trial court sentenced her to 3 days in the Harris County Jail and a $1,500.00 fine. (CR 58).

**STATEMENT OF THE PROCEDURAL HISTORY**

On August 26, 2014, a unanimous panel of the First Court of Appeals issued an unpublished opinion affirming the trial court's denial of Appellant's motion to suppress. *Pullen v. State*, No. 01-13-00259-CR (Tex. App. — Houston [1st. Dist.] Aug. 28, 2014, pet. filed) (not designated for publication). A motion for en banc rehearing was filed by Appellant on October 10, 2014, which was denied on November 20, 2014. The First Court of Appeals also issued an order on November 20, 2014, titled "corrected pages to opinion issued." (*See Appendix A*). After one extension was granted, this petition for discretionary review is timely if filed by January 21, 2015. *See* TEX. R. APP. P. 68.2(a).

The First Court of Appeals held that the trial court did not err in denying Appellant's motion to suppress because the thirty minute detention of Appellant was reasonable under the Fourth Amendment. *Pullen*, 14. The Court held that the thirty minute delay was justified by legitimate law enforcement purposes in furtherance of the investigation. *Id*. at 13. The First Court of Appeals also held that

7

the duration of Appellant's detention was also reasonable under the Fourth Amendment. *Id*. at 14.

**REASONS FOR REVIEW**

This petition for discretionary review should be granted because the First Court of Appeals' decision conflicts with U.S. Supreme Court cases, namely *United States v. Sharpe*, 470 U.S. 675 (1985), *Florida v. Royer*, 460 U.S. 491, 500, (1983), and *Michigan v. Summers*, 452 U.S. 692 (1981). *See* TEX. R. APP. P. 66.3(c). Appellant's warrantless detention for thirty minutes failed to effectuate the purpose of the detention because the delay was solely to wait for an "designated DWI Unit" with **inferior expertise and no additional necessary video equipment**.

**GROUNDS FOR REVIEW**

The U.S. Supreme Court has strictly limited the duration of warrantless seizures to the amount of time necessary to quickly dispel the suspicion of criminal activity. *Sharpe*, 470 U.S. at 686. The U.S. Supreme Court has never found that a citizen could be reasonably detained strictly because of personnel assignments or "designations" of particular officers within a police department. Namely, this Court should determine whether a thirty minute detention by an officer with superior expertise and knowledge is reasonable under the Fourth Amendment in order to wait for an officer with **inferior knowledge and less experience** but had the personnel assignment of being an "designated DWI Unit." This investigation

8

was not conducted more efficiently or enhanced by waiting for thirty minutes for the arrival of the "designated DWI Unit" HPD Officer Sanchez. Officer Musket had no video recording equipment and neither did Officer Sanchez. Legitimate law enforcement purposes have never been defined by this Court under the reasonableness standard of the Fourth Amendment and the courts of appeals have improperly expanded permissible legitimate law enforcement purposes.

## GROUND FOR REVIEW

**Is it reasonable under the Fourth Amendment for an officer with superior expertise conducting DWI investigations to detain a suspected intoxicated driver for thirty minutes to wait for another officer with inferior DWI expertise with no video recording equipment?**

The First Court of Appeals ignores the fact that the thirty minute delay waiting for "designated DWI Unit" did not directly effectuate the purpose of the detention — after the delay an officer with inferior expertise arrived with no necessary video equipment. This Court has the opportunity to define the permissible of legitimate law enforcement purposes during warrantless detentions in Texas under the Fourth Amendment. The entire purpose of a warrantless detention by one officer is to delay to allow for another officer to arrive in order to elevate the investigation through superior knowledge, expertise or equipment — thereby, making the delay a worthy and reasonable endeavor.

9

The sole reason for the thirty minute delay of Appellant was waiting for the "designated DWI Unit" to arrive the scene. Both Officers Muskiet and Sanchez did not have video recording devices on their HPD patrol vehicles. Musket never testified he felt that he was in danger or needed back-up officers for officer safety purposes. No evidence was presented that the "designated DWI Unit" had superior training or experience, in fact, the opposite was true. Officer Muskiet (the initial officer) had conducted far more DWI investigations in his career than Officer Sanchez. Muskiet testified that he was fully qualified to conduct DWI investigations and had done so many occasions and could efficiently and effectively investigate Appellant's suspected intoxication. (RR III 38, 47). Nothing prevented the fully trained and available officer from investigating Appellant except Muskiet calling in for a "DWI Unit" - anticipating and expecting an officer with <u>superior knowledge and expertise</u> (like a HPD DWI task force officer) to arrive. HPD Officer Sanchez's investigation at the scene was a total of eight minutes compared to the delay of 30 minutes waiting for her arrival. She failed to even offer the Appellant the full battery of the three standardized field sobriety tests — contrary to her training, again, demonstrating her detriment to the investigation.

In *United States v. Sharpe*, 470 U.S. 675 (1985), the U.S. Supreme Court found that the patrol officer was justified in waiting for the DEA agent to arrive because he knew about the investigation and had superior training, knowledge, and

experience in handling narcotics investigation. *Id.* at 687.  The Supreme Court's standard in *Sharpe* exemplifies the direct nature of the delay — it enhanced and furthered the investigation in order to be conducted by an expert officer. Appellant's case is the reverse of the officers involved in *Sharpe* - the thirty minute delay was spent waiting for an officer with inferior training, knowledge and experience handling DWI investigations.  Court of appeals in Texas have improperly expands the U.S. Supreme Court's definitions of legitimate law enforcement purposes in order to find that legitimate law enforcement purposes existed in Appellant's case.

Courts of Appeals throughout Texas have routinely affirmed warrantless detentions based on the reasonable detention of DWI suspects while waiting for a DWI Task Force officer to arrive at a scene. *Bullock v. State*, 426 S.W.3d 226 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Hartman v. State*, 144 S.W.3d 568, 573 (holding that a five to fifteen minute delay in DWI investigation so another officer could arrive at the scene with a **video camera** served a legitimate law enforcement purposes);  *Belcher v. State*, 244 S.W.3d 531, 541 (Tex. App. Fort Worth 2007, no pet.) (holding that the initial officer asked the suspect questions in furtherance of the DWI investigation, such as where the suspect had been drinking, where he had been prior to the stop and where he was going.  **Also the initial officer had less experience and was less efficient at conducting DWI investigations.**); *Smith v. State*, No. 03-06-00085-CR, 2007 WL 700834, at 3–4, Tex. App.—Austin Mar. 7,

11

2007, pet. ref.'d)(mem. op., not designated for publication)(holding an investigative delay waiting for a rookie officer for the purpose of training was reasonable because it further a legitimate law enforcement purpose.) [emphasis added].

In *Belcher v. State*, the court held that a twenty-seven minute delay waiting for a *more* experienced officer who could perform the investigation quicker was not unreasonable in duration and served a legitimate law enforcement purpose. *Belcher v. State*, 244 S.W.3d 531, 540-541 (Tex. App.—Fort Worth 2007, no pet.). Inherently, DWI task force officers are experts in efficiently investigating, identifying, conducting standardized field sobriety tests, documenting and testifying about their findings in court. The delay in *Belcher* is directly justified and effectuated by an improvement in the investigation as a result of it being conducted by an officer with more DWI investigation expertise. The distinction in Appellant's case occurs because the delay was waiting for a non- DWI Task Force officer — this distinction is never discussed in Appellant's case. The delay in the *Hartman* case was directly justified as legitimate law enforcement purposes by the assistance of waiting for the second officer with a <u>video recording equipment</u> to arrive at the scene. Again, neither Officer Muskiet or Sanchez had video recording equipment, therefore, no directly related investigative tool caused the delay.

In *Bullock v. State*, 426 S.W.3d 226 (Tex. App.—Houston [1st Dist.] 2012, no pet.), specifically involved a delay waiting for a DWI task force officer after the

12

initial officer had the suspect perform the HGN test (a standardized field sobriety test), he first called for a DWI task force officer and even made a second follow-up call during the delay to check on the status of the DWI task force officer. Appellant's case is factually distinguishable on many levels from *Bullock* (besides, there is no DWI task force officer whatsoever); including the lack of investigative activity taken by Muskiet. Musket was fully trained and qualified to have had Appellant perform the HGN standardized field sobriety test during the delay but he simply waited instead. Muskiet never made a second call during the delay to inquiry regarding the arrival time of Sanchez.

The Court of Appeals' opinion on pages 12-13 stated the following: "Muskiet also explained that while a designated DWI Officer is conducting her investigation, it is the "usual practices" of patrol units to begin completing necessary paperwork, such as completing a "tow slip" if a defendant's automobile must be towed from the scene."

However, none of these actions are found in the record as actually being performed by Muskiet. No evidence of written paperwork by Muskiet was presented or offered into evidence by the State during trial. Muskiet never testified that he actually completed any paperwork in Appellant's case - including no mention at all of completing a "tow slip." Muskiet did not write an Offense Report or a supplement regarding any investigative actions he undertook. No tow slip was ever offered into evidence during the trial by the State. Absent from the record is

13

any mention of whether or not Appellant's vehicle was towed from the scene. Therefore, the opinion relied upon non-existent legitimate law enforcement purposes to justify the thirty minute detention of Appellant. This vague reference fails to articulate any concrete facts in order to justify Appellant's detention. The distinct lack of specific details of legitimate law enforcement purposes undermines the State's arguments and the Opinion issued.

The lack of any diligent investigation into Appellant's suspected intoxication by Muskiet also rendered the duration detention unreasonable under the Fourth Amendment. The length of a temporary investigative detention is generally considered reasonable as long as the police are diligently engaged in a means of investigation that is likely to permit the officers to quickly and efficiently confirm or dispel their reasonable suspicions of criminal activity. *Sharpe*, 470 U.S. at 686, *Kothe v. State*, 152 S.W.3d 54, 64 (Tex. Crim. App. 2004). The question is also whether the law enforcement officer acted unreasonable in failing to choose a less intrusive method. *Hartman*, at 574 citing *Sharpe*, 470 U.S. at 687, (quoting *Cady v. Dombrowski*, 413 U.S. 433, 437 (1973). There is no bright line rule as to how long a traffic stop may reasonably continue; however, courts consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686-87, 105 S. Ct. at 1575-76; see *United States v. Brigham,* 382 F.3d 500, 511 (5th Cir. 2004). Musket failed to administer any

14

standardized field sobriety tests, failed to ask Appellant any questions about her activities that evening, how many alcoholic drinks she consumed, where she was coming from, what she had to eat, etc. He did not perform any other actions in furtherance of the investigation of Appellant's suspected intoxicated. Muskiet had thirty minutes which provided him an abundance of time to complete the entire investigation of Appellant with his DWI expertise.

The thirty minute detention of Appellant (at her own apartment complex - with her expectation of returning to her residence) was almost four times as long in duration as Sanchez's entire investigation which only lasted eight minutes. The only action that Musket took was to call for "a designated DWI patrol officer" even though it caused the thirty minute delay. Muskiet made a single request and then waited and did not exercise any due diligence to investigate Appellant. He failed to ask Appellant any questions about her activities that evening, how many drinks she consumed, where she was coming from, what she had to eat, etc. He did not perform any other actions in furtherance of the investigation of Appellant's suspected intoxicated. Muskiet had thirty minutes which provided him an abundance of time to complete the entire investigation of Appellant. Eavesdropping on Appellant's phone conversation does not demonstrate any diligence on Muskiet's behalf because that was not conducted in furtherance of investigating her suspected intoxication.

Sanchez's inexperience and inadequate knowledge regarding DWI investigation were repeatedly demonstrated throughout the trial. The officer conducted an improper HGN demonstration, she did not know the three phases of DWI investigation and detection as taught by NTSHSA (RR III 127)., had only been involved in maybe a total of four prior DWI investigations, she had only been out the police academy six months prior to Appellant's arrest, she was not a member of the Houston Police Department DWI Task Force, there was no video camera in her car, she needed assistance from Officer McRae, and she signed the DIC-23 document without actually personally reading it to Appellant.

It is inherently unreasonable under the Fourth Amendment to wait for an inexperienced officer whom is not a member of HPD DWI Task Force to arrive to conduct an investigation when Officer Muskiet, the initial officer, is much more qualified to continue the investigation without any delay. Muskiet is present at the scene and fully qualified to investigate Appellant's suspected intoxicated - nothing prevented him from continuing. His decision to wait thirty minutes intentionally delayed the investigation which made it more complex and slower. The HPD policy is for patrol units to call for HPD DWI Task Force members to assist them on scene. Being labeled as a "DWI Unit" does not mean Sanchez has any specialized DWI knowledge or training - she was grossly mis-assigned that evening. Muskiet failed to comply with HPD policy - the entire reason the DWI Task Force exists is because of their superior expertise and knowledge regarding

16

DWI investigations. Muskiet called for a HPD DWI Task Force member to come to Appellant's scene. Sanchez was not a member of the HPD DWI Task Force and had less knowledge than Muskiet which the panel's opinion fails to analyze or acknowledge.

Muskiet never testified that he was purposely holding Appellant for Sanchez to gain experience as a new officer– contrary to the initial officer in the *Smith* case whom purposely waiting for a rookie officer so they could gain experience. *Smith*, at 3-4 (unpub.). The record is silent as to whether Muskiet was concerned about officer safety and was not argued by the State as a reason to justify Appellant's detention.

The mere existence of a police policy alone does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment. *See Sibron v. New York*, 392 U.S. 40, 61, (1968) ("The question in this Court upon review of a state-approved search or seizure is not whether the search (or seizure) was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment"). A police department whom assigns officers without any specialized knowledge or expertise in the particular subject matter should not be allowed to detain citizens pursuant to such a policy — in order to wait for for an inferior investigator with no necessary equipment. Delays in an investigation must directly enhance and elevate law enforcement

officers' investigative efforts, if not, the Fourth Amendment protects citizens from warrantless detentions.

## PRAYER FOR RELIEF

It is respectfully requested that this Petition be granted, the First Court of Appeals' judgment be reversed, and the court ordered to enter findings consistent with this Court's opinion.

Respectfully submitted:

/S/    GARY S. MILLER
**GARY S. MILLER**
Attorney for Alyssa Pullen
State Bar No:  24051050
1018 Preston St., Suite 500
Houston, TX 77002
phone: (713) 223-4200
fax: (713) 568-2820
gary@millerdefense.com

## CERTIFICATE OF SERVICE

Pursuant to TEX. R. APP. P. 9.5, this certifies that on January 21, 2015, a copy of the foregoing Petition was mailed to the following address: Assistant District Attorney Carly Dessauer, Harris County District Attorney's Office, 1201 Franklin Street, Houston, Texas 77002.  The revised version was sent by e-mail on February 4, 2015.

/S/    GARY S. MILLER
**GARY S. MILLER**

## CERTIFICATE OF COMPLIANCE

I, Gary S. Miller, hereby certify that the Appellant's Petition for Discretionary Review contains 3,489 words according to Apple Pages 5.1 which was used to generate this document according to TEX. R. APP. P. 9.4 (3).

GARY S. MILLER  /S/
**GARY S. MILLER**

Date:  January 21, 2015

# Appendix A

Opinion issued August 26, 2014



In The

## Court of Appeals

For The

## First District of Texas

———————————

NO. 01-13-00259-CR

———————————

**ALYSSA PULLEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the County Criminal Court at Law No. 4
Harris County, Texas
Trial Court Case No. 1817849

## MEMORANDUM OPINION

A jury found appellant, Alyssa Pullen, guilty of the misdemeanor offense of driving while intoxicated ("DWI"),[1] and the trial court assessed her punishment at confinement for three days and a fine of $1,500. In two issues, appellant contends

---

[1] *See* TEX. PENAL CODE ANN. § 49.04(a) (Vernon Supp. 2013).

that the trial court erred in denying her motion to suppress all "evidence obtained as a result of [an] unreasonable detention" and, alternatively, her blood specimen, which was obtained pursuant to a search warrant "based upon material misrepresentations and omissions."[2]

We affirm.

## Background

Houston Police Department ("HPD") Officer M. Muskiet testified that at 2:25 a.m. on March 25, 2012, while on patrol duty with Officer Gautreaux, he stopped appellant. When he approached the driver's side of appellant's car to speak with her, he noticed that she had a "[s]trong odor of alcohol on her breath," spoke with slurred speech, and had "red eyes." After obtaining appellant's driver's license, Muskiet radioed a request for HPD Officer S. Sanchez, working as a designated DWI patrol unit, "to come out and take control of the situation." Appellant remained in her car, and although he did not ask her any further questions, Muskiet kept her driver's license and she was not free to leave. After twenty-four to thirty minutes, Sanchez arrived at the scene.

Officer S. Sanchez testified that on March 25, 2012, she, having been assigned to work as the designated DWI patrol unit, was dispatched to assist Officer Muskiet. She arrived at the scene at 2:49 a.m., twenty-four minutes after

---

[2]    See U.S. CONST. AMEND. IV.

Muskiet's traffic stop. When she spoke with appellant, Sanchez noted that appellant had "red eyes, slurred speech," and her breath smelled of alcohol. Sanchez asked appellant if she had been drinking, and appellant said that she had two drinks at 2:00 a.m. and had last eaten at 11:00 p.m. Sanchez then administered to appellant one field sobriety test, the horizontal gaze nystagmus ("HGN") test, and appellant exhibited six out of six "clues" indicating intoxication. At 2:57 a.m., Sanchez transported appellant to the HPD Central Intoxilyzer Facility ("Central Intox") in order to determine whether she was intoxicated. Once at Central Intox, Sanchez had HPD Officer McRae perform additional sobriety tests.

Officer McRae testified that on March 25, 2012, while working at Central Intox, he read appellant her statutory warnings from form DIC-24[3] and asked her to provide a specimen of her breath and blood, but she declined. After appellant declined to provide a breath or blood sample, the officers videotaped McRae administering the additional sobriety tests to appellant. The trial court admitted the videotape into evidence.

Officer McRae explained that Standard Field Sobriety Tests are designed by the National Highway Traffic Safety Administration ("NHTSA") to determine

---

[3] The DIC–24 is a standard form used to request breath or blood specimens from suspected intoxicated drivers. *See Martin v. Dep't of Pub. Safety*, 964 S.W.2d 772, 773 (Tex. App.—Austin 1998, no pet.). The form fulfills the statutory requirements of the Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.015 (Vernon Supp. 2013).

3

whether a person can perform two or more tasks simultaneously to see if the person is impaired. Three of the tests validated by the NHTSA have their own "clues," or signs, to reveal intoxication: the HGN test, the walk-and-turn test, and the one-leg stand test. Thus, a poor performance on only one of the tests can reveal intoxication.

Officer McRae first administered to appellant the one-leg stand test, and, while the videotape was being played for the jury, he noted that he saw one "clue" indicating intoxication. Next, McRae administered the walk-and-turn test, and appellant demonstrated two "clues" for intoxication. McRae then administered the Rhomberg test, in which appellant was asked to estimate time lapse while, with her eyes closed, tilting her head back for an estimated thirty seconds. McRae noted that appellant began "swaying" after only five to six seconds and estimated that thirty seconds had lapsed after only eighteen seconds had actually passed. This indicated that appellant had lost the normal use of her physical and mental faculties. Finally, McRae administered the "alphabet test" to appellant, in which she was instructed to recite the letters of the alphabet beginning with the letter "K" and ending with the letter "X." Appellant recited "L, M, N, O, P, Q, R, X" the first time McRae administered the test and "K, L, M, N, O, P, Q, R, X" the second time. McRae explained that considering all of the information obtained from appellant's performance of the Standard Field Sobriety Tests, as well as the Rhomberg and

4

alphabet tests, he formed the opinion that appellant did not have the normal use of her mental and physical faculties. And, in his opinion, based on Officer Sanchez's report and the strong odor of alcohol on appellant's breath, alcohol was the cause of her intoxication.

After having spoken to Officers Muskiet and Gautreaux, performed her own investigation at the scene, and observed Officer McRae administer the additional sobriety tests to appellant, Officer Sanchez testified that she obtained a search warrant for appellant's blood.

HPD Criminalist L. Mayor testified that the results of testing conducted on appellant's March 25, 2012 blood sample showed that she had 0.18 grams of alcohol per 100 milliliters of her blood. Mayor explained that, through using a "retrograde extrapolation" analysis,[4] she calculated that if appellant, at the time her blood sample was obtained, was in the "elimination phase," i.e., eliminating alcohol from her body, her estimated blood alcohol content would have been between 0.21 and 0.27 at the time of the traffic stop. Mayor also calculated that if

---

[4] "Retrograde extrapolation" is a mathematical calculation used to estimate a blood alcohol concentration at a time prior to the obtaining of blood for testing, based in part on the average absorption rate of alcohol in the human body. Mayor explained that her calculation was based on the specific facts relevant to appellant's case: a female; weighing 115 pounds; five feet, three inches tall; twenty-one years old; who had consumed two alcoholic drinks, consisting of vodka and soda, at 2:00 a.m.; who last ate at 11:00 p.m.; who was detained at 2:25 a.m.; and whose blood was drawn at 5:32 a.m. and showed a blood alcohol concentration at that time of 0.18.

appellant, at the time her blood sample was obtained, was instead in the "absorption phase," i.e., absorbing alcohol into her blood, her blood alcohol content would have been between 0.19 and 0.21 at the time of the traffic stop. She opined, therefore, that the minimum blood alcohol level for appellant at the time Officer Muskiet conducted the traffic stop was 0.19.

## Standard of Review

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion and the trial court's application of the law to the facts de novo. *Id.* Almost total deference should be given to a trial court's implied findings, especially those based on an evaluation of witness credibility or demeanor. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The trial court is the sole and exclusive trier of fact and judge of a witness's credibility, and it may choose to believe or disbelieve all or any part of the witness's testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Therefore, we give almost total deference to the trial court's rulings on questions of historical fact and application-of-law-to-fact that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644,

6

652–53 (Tex. Crim. App. 2002). When a trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo the trial court's rulings on mixed questions of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

When, as here, a trial court makes certain explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports its fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We then review the trial court's legal ruling de novo, unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.*

## Investigative Detention

In her first issue, appellant argues that the trial court erred in denying her motion to suppress all evidence obtained as a result of Officer Muskiet's detention of her because he "unreasonably detained" her for at least twenty-four minutes before arresting her and the "delay did not further any legitimate law enforcement purposes." *See* U.S. CONST. amend. IV. She further argues that the twenty-four minute detention was "inherently unreasonable" because "Muskiet did not diligently pursue an investigation to confirm or dispel his suspicion that she was intoxicated," but instead waited for a "less experienced officer" to come to the scene. The State responds that the detention of appellant for a DWI investigation

7

was based on Muskiet's reasonable suspicion that she was intoxicated and it was not unreasonable for him to call in a designated DWI patrol unit to the scene, a decision he based on legitimate law enforcement purposes.

In its findings of fact and conclusions of law, the trial court specifically found that "during the 30 minute[s] it took [O]fficer Sanchez to arrive," appellant "was allowed to remain in her vehicle" and "was not handcuffed or otherwise restrained, but was not free to leave." It concluded that Officer Muskiet had probable cause to stop appellant and the "[thirty-]minute detention period was not unreasonable."

The question of whether a specific search or seizure is "reasonable" under the Fourth Amendment as applied to the historical facts found by a trial court is subject to de novo review. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). To decide whether appellant's detention while Officer Muskiet waited for Officer Sanchez was "reasonable" under the specific circumstances presented here, we view the trial court's factual findings in the light most favorable to its ruling, but we decide the issue of "reasonableness" as a question of Fourth Amendment law. *Id.* at 63; *Belcher v. State*, 244 S.W.3d 531, 538 (Tex. App.—Fort Worth 2007, no pet.).

An investigative detention by a law enforcement officer in which the subject of the investigation is not free to leave is a seizure for purposes of the Fourth

8

Amendment. *Johnson v. State*, 912 S.W.2d 227, 236 (Tex. Crim. App. 1995). "The Fourth Amendment prohibits unreasonable searches and seizures, and this limitation is implicated by a law enforcement officer's detention of motorists during a traffic stop." *Bullock v. State*, 426 S.W.3d 226, 229 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Arizona v. Johnson*, 555 U.S. 323, 326–27, 129 S. Ct. 781, 784 (2009); *Garcia v. State*, 827 S.W.2d 937, 943–44 (Tex. Crim. App. 1992)). "A law enforcement officer may lawfully stop and detain a motorist who commits a traffic violation." *Id.* (citing *Arizona*, 555 U.S. at 327, 129 S. Ct. at 784; *Garcia*, 827 S.W.2d at 944). Such a traffic stop generally constitutes a legitimate "investigative stop." *Id.* (citing *Arizona*, 555 U.S. at 327, 129 S. Ct. at 784); s*ee also Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968). However, "the length of [a] detention must be reasonable in relation to the officer's investigation; and at some point, a detention may become too long in duration to be justified as an investigative stop." *Bullock*, 426 S.W.3d at 229 (citing *United States v. Sharpe*, 470 U.S. 675, 683–88, 105 S. Ct. 1568, 1574–77 (1985)).

The United States Supreme Court has adopted a two-pronged inquiry for determining the reasonableness of an investigative detention: (1) "whether the officer's action was justified at its inception," and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19–20, 88 S. Ct. at 1879; *see also Davis v. State*, 947

9

S.W.2d 240, 242 (Tex. Crim. App. 1997) (holding *Terry* analysis applies in Texas). This is a factual determination, and it "is to be made and reviewed by considering the totality of the circumstances existing throughout the detention." *Belcher*, 244 S.W.3d at 538–39 (citing *Loesch v. State*, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997)).

There is no bright line rule as to how long a traffic stop may continue and still be considered reasonable. *Bullock*, 462 S.W.3d at 229. "[C]ommon sense and ordinary human experience must govern over rigid criteria." *Belcher*, 244 S.W.3d at 539 (citing *Sharpe*, 470 U.S. at 685, 105 S. Ct. at 1575). The reasonableness of the duration of a detention depends on whether the law enforcement officer "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686, 105 S. Ct. at 1575. In determining the reasonableness of the duration of a detention, we may consider legitimate law enforcement purposes served by any delay in the officer's investigation. *Id.* at 685, 105 S. Ct. at 1575. Fourth Amendment reasonableness "requires a balance between the public interest served and the individual's right to be free from arbitrary detentions and intrusions." *Kothe*, 152 S.W.3d at 63.

A delay in an officer's investigation to confirm or dispel the officer's suspicions of the suspect, and a resulting prolonged detention, is reasonable under

10

the Fourth Amendment when the delay furthers legitimate law enforcement purposes. *See Sharpe*, 470 U.S. at 685, 105 S. Ct. 1575; *Hartman v. State*, 144 S.W.3d 568, 572–73 (Tex. App.—Austin 2004, no pet.). Texas courts have held that such legitimate law enforcement purposes include: a delay to permit the arrival of a DWI enforcement officer so that a supervising officer may return to duty; a delay for the arrival of a video camera so that the DWI investigation and field sobriety tests could be videotaped according to department procedure; and a delay for the arrival of a new officer in need of training. *Hartman*, 144 S.W.3d at 573–74 (holding five to fifteen-minute delay in DWI investigation for video recording reasonable); *Smith v. State*, No. 03-06-00085-CR, 2007 WL 700834, at *3–4 (Tex. App.—Austin Mar. 7, 2007, pet. ref'd) (mem. op., not designated for publication) (holding delay in DWI investigation for new officer training reasonable); *Dickson v. State*, No. 03-06-00126-CR, 2006 WL 3523789, at *1, 4 (Tex. App.—Austin Dec. 6, 2006, no pet.) (mem. op., not designated for publication) (holding twenty-minute delay in DWI investigation for arrival of DWI enforcement officer reasonable).

Appellant argues that the length of her detention was unreasonable because Officer Muskiet actually stopped his investigation and waited for Officer Sanchez, a "less experienced officer," to arrive at the scene. And she asserts that Muskiet did not "diligently pursue an investigation related to his suspicion that [she] was

intoxicated during the delay" and made no attempt to confirm his suspicion in the least intrusive manner possible.

Here, the trial court could have reasonably concluded that Officer Muskiet's detention of appellant, until Officer Sanchez arrived thirty minutes, as found by the trial court, after Muskiet initially stopped appellant, was reasonably related to his belief that she was intoxicated. Muskiet began an investigation when he stopped and questioned appellant after she had run a red light. He testified that while speaking with her, he noticed that she had a strong odor of alcohol on her breath, spoke with slurred speech, and had "red eyes." Muskiet explained that he had been an HPD officer for six years and had received DWI training, including training in the administration of sobriety tests. He noted that his experience patrolling for six years had "greatly improved" his ability "to detect whether someone is intoxicated" and, in regard to appellant, he had "determined that [there were] enough intoxication clues." Based on the evidence, he requested that Officer Sanchez "come out and take control of the situation."

Officer Muskiet explained that it would have taken him several hours to complete a DWI investigation of appellant and it was HPD's general procedure for patrol officers like him to call for a designated DWI patrol unit if available because it allowed them to "remain in service" and "run more calls instead of being tied up." Muskiet also explained that while a designated DWI officer is conducting her

12

investigation, it is the "usual practice" of patrol units to begin completing necessary paperwork, such as completing a "tow slip" if a defendant's automobile must be towed from the scene. Appellant's detention was based on HPD procedures developed for legitimate law enforcement purposes. *See Sharpe*, 470 U.S. at 685, 105 S. Ct. at 1575 (noting emphasis on "need to consider the law enforcement purposes served by stop as well as the time reasonably needed to effectuate such purposes").

Officer Muskiet's decision to detain appellant while waiting for Officer Sanchez was reasonably related to the underlying traffic stop and detention of appellant on suspicion of DWI and to further protect the public. Accordingly, we hold that legitimate law enforcement purposes were served by the detention of appellant so that Sanchez could arrive at the scene and complete the DWI investigation.

In regard to the length of appellant's detention, we examine whether, given the totality of the circumstances, the delay of the DWI investigation nonetheless rendered the detention unreasonable under the Fourth Amendment. Here, Officer Muskiet requested that Officer Sanchez continue the DWI investigation immediately after Muskiet noted certain "clues" that led him to suspect that appellant had been operating a motor vehicle while intoxicated. While waiting for Sanchez to arrive, appellant, although not free to leave, was not handcuffed and

was allowed to remain in her car. And, during the delay, she made at least one call on her cellular telephone. Most importantly, it took Sanchez only thirty minutes to arrive at the scene and continue the DWI investigation.

Although it is possible that Officer Muskiet could have administered the field sobriety tests himself, "the key inquiry is not whether a less intrusive alternative was available to [him], but whether [he] acted reasonably in failing to choose that alternative." *Hartman*, 144 S.W.3d at 574 (citing *Sharpe*, 470 U.S. at 687, 105 S. Ct. at 1576). Here, it was reasonable for Muskiet to call for Officer Sanchez, a designated DWI patrol officer, to continue the DWI investigation, even though doing so caused a delay in the investigation. Muskiet followed HPD procedure and promptly requested assistance from the designated DWI unit.

Balancing the public interest served against appellant's Fourth Amendment right to be free from arbitrary detention and intrusion, giving almost total deference to the trial court's historical fact findings, and viewing the evidence in the light most favorable to the trial court's ruling, we hold, given the totality of the circumstances, that the continued detention of appellant was not unreasonable under the Fourth Amendment. *See Sharpe*, 470 U.S. at 686–88, 105 S. Ct. 1575–76.

14

Accordingly, we further hold that the trial court did not err in denying appellant's motion to suppress all evidence obtained as a result of Officer Muskiet's detention of her.

We overrule appellant's first issue.

## Blood Specimen

In her second issue, appellant argues that the trial court erred in denying her motion to suppress the blood specimen taken from her because it was obtained with a warrant that was "issued based upon material misrepresentations and omissions in Officer Sanchez's affidavit; including false statements regarding imaginary standardized field sobriety testing[,] along with elevated scoring of standardized field sobriety tests." She asserts that, once these "false statements are removed from the affidavit . . . [and] the material omissions" made by Sanchez are considered, the affidavit fails to contain sufficient facts to establish probable cause for the issuance of a warrant." The State responds that Sanchez did not intentionally, knowingly, or with reckless disregard for the truth include inaccurate information in her affidavit, the omitted information of which appellant complains was not necessary, and facts establishing sufficient probable cause exist in the affidavit to support the magistrate's decision to issue the warrant.

Law enforcement personnel may obtain a defendant's blood for a DWI investigation by search warrant. *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim.

15

App. 2002). The Fourth Amendment requires that "[n]o warrants shall issue, but upon probable cause, supported by [o]ath or affirmation." U.S. CONST. amend IV; *see also* TEX. CODE CRIM. PROC. ANN. art. 1.06 (Vernon 2005). A search warrant may be obtained from a magistrate only upon submission of an affidavit setting forth substantial facts establishing probable cause. TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (Vernon Supp. 2013). The affidavit must set forth specific facts establishing that a specific offense has been committed, the item to be seized constitutes evidence of the offense or evidence that a particular person committed the offense, and that the item is located at, or on the person, place, or thing to be searched. TEX. CODE CRIM. PROC. ANN. art. 18.01(c).

When a magistrate construes a probable cause affidavit, he is permitted to "interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts and circumstances contained within its four corners." *State v. Jordan,* 342 S.W.3d 565, 569 (Tex. Crim. App. 2011). On a complaint that evidence obtained during a search should be suppressed because the magistrate had no probable cause to issue a search warrant, we apply a "great deference" standard of review to the magistrate's determination of probable cause. *Id.* "Probable cause exists if, under the totality of the circumstances set forth in the affidavit before the magistrate, there is a 'fair probability' that contraband or evidence of a crime will be found in a particular place at the time the warrant is

16

issued." *Id.* at 568–69. In our review of the magistrate's determination, we determine whether "'the magistrate had a substantial basis for concluding that probable cause existed.'" *Id.* at 569 (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983)). And we employ a totality-of-the-circumstances analysis. *Gates*, 462 U.S. at 230–37, 103 S. Ct. at 2328–31. The Texas Court of Criminal Appeals has explained, "The issue is not whether there are other facts that could have, or even should have, been included in the affidavit;" instead "we focus on the combined logical force of the facts that *are* in the affidavit . . . ." *Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007). And the truthfulness of the factual showing providing probable cause for a warrant does not mean "'truthful[ness]' in the sense that every fact recited in the warrant affidavit is necessarily correct." *Franks v. Delaware*, 438 U.S. 154, 165, 98 S. Ct. 2674, 2681 (1978). "[S]o long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search [warrant] would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (alteration in original).

Officer Sanchez obtained a search warrant for a blood specimen from appellant, and attached to the warrant was an affidavit that she prepared. In her affidavit, Sanchez testified that she is a certified peace officer; she, during her employment, had observed "numerous people who [were] under the influence of

17

alcohol or other substances"; and she had reason to believe that appellant had operated a motor vehicle in a public place while intoxicated. She explained that her opinion was based on the observations of Officers Muskiet and Gautreaux, and her personal observations:

> In this case, March 25, 2012, at 0225 am, Officers Muskiet and Gau[t]reaux observed [appellant] operating a motor vehicle at 3400 Edloe, a public place in Harris County, Texas. The officers observed her run a red light and initiated a traffic stop. They made contact with [appellant] and noticed [a] strong odor of alcoholic beverage, red eyes, and slurred speech.
>
> I arrived at the scene, came into contact with [appellant] and noticed the strong odor of alcoholic beverage, red eyes, and slurred speech.
>
> [Appellant] admitted to drinking two drinks of vodka and soda.

She also included in the affidavit details concerning the field sobriety tests that the officers administered to appellant:

> I asked [appellant] to perform some field sobriety tests to determine [appellant's] level of intoxication, including the [HGN], One Leg Stand[,] and Walk and Turn. I use these tests frequently and find them to be accurate and reliable indicators of intoxication or lack thereof and have arrested many people based on their poor performances on these tests (as well as having released many people based upon their satisfactory performance on these tests).
>
> I observed [appellant] to have 6 out of 6 clues on the HGN test. I did not do any more tests at the scene. At the station, Officer McRae performed standardized field sobriety tests and observed 6 out of 6 [clues] on HGN, 2 out of 4 clues on the one leg stand, and 3 out of 8 clues on the walk and turn. Officer McRae also asked [appellant] to recite the alphabet from K to X, and [appellant] was able to get "KLMNOPQRX."

18

Appellant asserts that the above statements about the results of the field sobriety tests are false, and she argues that because she has made a "preliminary showing that the false statements were made either knowingly and intentionally, or with reckless disregard [for] the truth," "the trial court should have excised them from the affidavit."[5] And appellant asserts that Officer Sanchez conceded that her statements were "false," making the trial court's finding that the statements were not made intentionally and knowingly, or with reckless disregard for the truth, to be "against the weight of the evidence." Appellant further asserts that Sanchez, in her affidavit, omitted sixteen material facts that the magistrate needed to make a probable cause determination, including "[t]he total investigation time by Sanchez," "[t]hat the arrest location was [a]ppellant's own apartment complex," and a "description of [a]ppellant's vehicle."

Viewing the statements made within the four corners of Officer Sanchez's affidavit in a common sense, non-technical manner, we conclude that the affidavit provided the magistrate with enough information to allow an independent conclusion that a fair probability existed that a "search" of appellant's blood would

---

[5] If a defendant establishes by a preponderance of the evidence that an affiant, in an affidavit in support of a search warrant, made false statements knowingly and intentionally, or with reckless disregard for the truth, and the false statements are material to the establishment of probable cause, the false, material statements must be excised from the affidavit. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 2676 (1978); *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007).

reveal evidence of a crime. *See Jordan*, 342 S.W.3d at 568–69; *Rodriguez*, 232 S.W.3d at 62. Although the trial court did not conduct a separate *Franks* hearing, it specifically found that "[t]he testimony and evidence did not" show that "the officer intentionally or knowingly, [or] with reckless disregard for the truth . . . attempt[ed] to mislead the magistrate."

"An affidavit supporting a search warrant begins with a presumption of validity; thus, the defendant has the burden of making a preliminary showing of deliberate falsehoods in that affidavit before he is entitled to a *Franks* hearing." *Cates v. State*, 120 S.W.3d 352, 355 (Tex. Crim. App. 2003). The Fourth Amendment does not mandate that every statement made in an affidavit supporting a search warrant be necessarily correct. *See Franks*, 438 U.S. at 164–65, 98 S. Ct. at 2681. A misstatement made that is merely the result of simple negligence or inadvertence will not render invalid the search warrant upon which the affidavit is based. *Dancy v. State*, 728 S.W.2d 772, 782–83 (Tex. Crim. App. 1987) (noting that misstatement in affidavit resulting from mere negligence in checking or recording facts relevant to probable cause "is beyond the pale of *Franks*").

Here, Officer Sanchez testified at trial that she had mistakenly said in her affidavit that she had offered "some" field sobriety tests to appellant; in fact, she had only administered the HGN test to appellant at the scene. Officer McRae actually administered the other sobriety tests to appellant at Central Intox. We

20

note that Sanchez in her affidavit did correctly state that after she had observed six out of six clues on the HGN test and she did not administer any additional tests at the scene. Also, although Sanchez stated, in her affidavit, that McRae had observed six out of six clues on the HGN test, this was incorrect. However, the trial court could have reasonably concluded that this was a simple mistake because Sanchez had actually administered the test to appellant at the scene. Sanchez also explained that she had mistakenly stated in her affidavit that McRae had observed two out of four clues on the one-leg stand and three out of eight clues on the walk-and-turn test. In fact, McRae had only observed one out of four clues on the one-leg stand and two out of eight clues on the walk-and-turn test.

The trial court was free to believe Officer Sanchez's explanations that she had mistakenly made misstatements in her affidavit, and it, thus, rejected appellant's assertions that Sanchez's misstatements were deliberate falsehoods. *See generally Franks*, 438 U.S. at 155–56, 98 S. Ct. at 2676 (establishing that defendant must show "perjury or reckless disregard . . . by preponderance of the evidence"). And the trial court's findings and conclusions regarding Sanchez's affidavit are supported by the record. *See Dancy*, 728 S.W.2d at 782–83. Accordingly, we conclude that the trial court could have reasonably found that Sanchez's misstatements were made negligently and not intentionally, knowingly, or with reckless disregard for the truth.

21

Finally, in regard to appellant's complaint that Officer Sanchez's affidavit omits certain facts, it is well established that an affidavit made in support of a search warrant must set "forth substantial facts establishing probable cause." TEX. CODE CRIM. PROC. ANN. art. 18.01(b). However, this does not require that an officer provide a laundry list of certain facts to establish probable cause in a search warrant affidavit; rather, the statute more generally requires that a search warrant affidavit contain enough information to allow a magistrate "to independently determine probable cause." *Rodriguez*, 232 S.W.3d at 61. We conclude that the facts contained in Sanchez's affidavit would lead an "untrained, common person" to believe that appellant was driving a motor vehicle while intoxicated. *See Hogan v. State*, 329 S.W.3d 90, 96 (Tex. App.—Fort Worth 2010, no pet.); *see also Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310 (1949).

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).